David LEFTON and Arthur
Lefton, Appellants

v.

Dixie GRIFFITH d/b/a Discount
Furniture Warehouse,
Appellee.

No. 04–03–00402–CV.

Court of Appeals of Texas,
San Antonio.

March 31, 2004.

Ryan G. Anderson, David L. Hanna, Kathy H. Kang, William H. Ford, Ball & Weed, P.C., San Antonio, for appellants.

N. Mark Ralls, Robert A. Ewert, Gonzales Hoblit Ferguson L.L.P., San Antonio, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, KAREN ANGELINI, Justice, SANDEE BYRAN MARION, Justice.

## OPINION

Opinion by KAREN ANGELINI, Justice.

David and Arthur Lefton appeal a default judgment granted in favor of Dixie Griffith. We affirm the judgment of the trial court in part and reverse and remand the judgment of the trial court in part.

### BACKGROUND

Dixie Griffith leased a property owned by David and Arthur Lefton for use as a furniture store. According to Griffith, she was unable to pay her rent. The Leftons agreed to give her until November 1, 2000, to vacate. Instead of keeping their prom-

ise, however, they changed the locks on October 20, 2000. For eight days, they refused to give her access to the property. She was allowed access to the property on October 28, 2000, for two weekend days. Because of the Leftons' actions, Griffith alleges, she was forced to sell the inventory of her furniture business at an extreme loss. Additionally, she was forced to sell her home to pay her creditors. She also suffered damage to credit reputation, lost profits, and mental anguish.

Griffith sued the Leftons for breach of contract, tortious interference, fraud, intentional infliction of emotional distress, and violation of the Deceptive Trade Practices Act. When the Leftons failed to answer the suit, Griffith moved for default judgment. The trial court granted default judgment in favor of Griffith on her DTPA claim, awarding her $350,000 in economic damages, $700,000 in trebled economic damages, $290,000 in mental anguish damages, $580,000 in trebled mental anguish damages, and $2,000 in attorney fees.

The Leftons filed a restricted appeal under Texas Rule of Appellate Procedure 30. *See* Tex.R.App. P. 30 ("A party who did not participate—either in person or through counsel—in the hearing that resulted in the judgment complained of and who did not timely file a postjudgment motion or request for findings of fact and conclusions of law, or a notice of appeal within the time permitted by Rule 26.1(a), may file a notice of appeal within the time permitted by Rule 26.1(c).").[1] Because the Leftons failed to timely file an answer, the facts alleged in Griffith's petition are deemed admitted, except the amount of damages. *Tex. Commerce Bank, N.A. v. New*, 3 S.W.3d 515, 516 (Tex.1999). The Leftons present the following issues for review:

(1) Did Griffith present legally and factually sufficient evidence to support the award of damages?

(2) Did Griffith show proof of service?

■ In their reply brief, the Leftons bring up two additional issues: first, they allege that Griffith cannot recover because she fails to establish that the Leftons *caused* the damages awarded; second, they allege that Griffith cannot recover because her alleged facts do not constitute a cause of action under the DTPA. A reply brief is limited in scope to responding to matters in an appellee's brief. Tex.R.App. P. 38.3. Therefore, because the Leftons failed to bring up these issues in their original brief, they are not properly before this court. *Sunbeam Envtl. Servs., Inc. v. Tex. Workers' Comp. Ins. Facility*, 71 S.W.3d 846, 851 (Tex.App.-Austin 2002, no pet.).

Even if these issues were properly before the court, however, because the Leftons failed to timely file an answer, the facts alleged in Griffith's petition are deemed admitted, except the amount of damages. *New*, 3 S.W.3d at 516. In her

---

1. Texas Rule of Appellate Procedure 25.1(d)(7)(A) requires that a notice of restricted appeal must "state that the appellant is a party affected by the trial court's judgment but did not participate—either in person or through counsel—in the hearing that resulted in the judgment complained of." Tex.R.App. P. 25.1(d)(7)(A). Texas Rule of Appellate Procedure 25.1(d)(7)(B) further requires that a notice of restricted appeal must "state that the appellant did not timely file either a post-judgment motion, request for findings of fact and conclusions of law, or notice of appeal." Tex.R.App. P. 25.1(d)(7)(B). Griffith argues that the Leftons failed to properly perfect their appeal because their notice of appeal fails to contain these statements. We have since granted leave, however, for the Leftons to so amend their notice of appeal, and they have done so. *See* Tex.R.App. P. 25.1(f) (allowing notice to be amended "on leave of the appellate court"). Accordingly, we overrule this issue on appeal.

petition, Griffith alleges that the Leftons' actions "were a producing cause of damages to Plaintiff." She further alleges a DTPA cause of action by stating that "Defendants engaged in unconscionable conduct as defined in § 17.50 of the Texas Business & Commerce Code." Thus, because the Leftons alleged causation and a DTPA claim, and because these allegations are admitted, the Leftons' argument is without merit.

## DISCUSSION

### I. Legal and Factual Sufficiency

The Leftons contend that Griffith failed to present legally and factually sufficient evidence of damages.

■ An appellant attacking the legal sufficiency of an adverse finding on which he did not have the burden of proof must demonstrate that there is no evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983). The reviewing court must consider all evidence in a light most favorable to the party in whose favor the verdict has been rendered and indulge every reasonable inference from the evidence in such party's favor. *Harbin v. Seale*, 461 S.W.2d 591, 592 (Tex.1970). If more than a scintilla of evidence exists to support the finding, the no-evidence challenge fails. *Formosa Plastics Corp. USA v. Presidio Eng'rs*, 960 S.W.2d 41, 48 (Tex.1998).

■ A party attacking the factual sufficiency of an adverse finding on an issue on which the other party had the burden of proof must demonstrate that there is insufficient evidence to support the adverse finding. *Hickey v. Couchman*, 797 S.W.2d 103, 109 (Tex.App.-Corpus Christi 1990, writ denied). In reviewing an insufficiency of the evidence challenge, the court must first consider, weigh, and examine all of the evidence which supports and which is contrary to the jury's determination. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989) (per curiam). Having done so, the court should set aside the verdict only if the evidence that supports the jury finding is so weak as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam).

### A. Was Affidavit in Evidence?

■ The record contains an affidavit by Griffith describing her damages. This affidavit is on file in the clerk's record and appears to have been filed *after* the entry of default judgment. The Leftons argue that because the affidavit was (a) not filed with the court at the time of the hearing, and (b) not admitted into evidence, we cannot know that the trial court ever considered it.

Griffith responds by pointing out that the trial court clearly references an affidavit during the hearing. The Leftons counter, however, that while the record reflects that the trial court referred to *an* affidavit at the default judgment hearing, there is no evidence that the trial court was referring to *Griffith's* affidavit.

It is clear that the trial court had Griffith's affidavit before it. At the hearing, Griffith's lawyer refers to the affidavit several times. Additionally, the trial court itself indicates that it had Griffith's affidavit before it:

THE COURT: Where is [the plaintiff]?

COUNSEL: Between Florida and Dallas.

THE COURT: Florida and—when did she leave?

COUNSEL: I am unaware of that answer.

THE COURT: Did she leave last week, or when did she leave?

COUNSEL: Honestly, Your Honor, I don't know.

THE COURT: What's your client's name?

COUNSEL: Dixie Griffith.

THE COURT: And you don't know—she's between Florida and where?

COUNSEL: Dallas.

THE COURT: And you don't know when she left.

COUNSEL: No, I'm not sure of that.

THE COURT: Huh?

COUNSEL: I am not sure of that, no.

THE COURT: You know why this puzzles me? Because this was—your client's affidavit was notarized today.

COUNSEL: That's correct. I have been in touch with her over the phone, and she faxed me her signature on that affidavit after we [had] discussed it, and I had a faxed copy to her.

The trial court's statement, "[T]his was—your client's affidavit was notarized today," indicates that the trial judge had an affidavit of Griffith's before him and was looking at it as he made this statement. Furthermore, because Griffith's affidavit was notarized the same day as the hearing took place, this statement confirms that it was *Griffith's* affidavit that was before the trial court. Because it is clear the trial court considered Griffith's affidavit, we overrule this issue on appeal. *See New*, 3 S.W.3d at 517 ("The trial court did not err when it considered the affidavits in rendering its default judgment.").

## B. *Affidavit Testimony*

The Leftons next argue that Griffith's affidavit does not provide legally or factually sufficient evidence of economic damages, mental anguish damages, or attorney fees.

### 1. *Economic Damages*

The trial court awarded Griffith $350,000 in economic damages. In her affidavit, Griffith describes four types of economic damages: (1) the loss resulting from the sale of her inventory, which she values at $290,000; (2) the loss resulting from the sale of her home, which she values at $60,000; (3) the harm to her credit rating, which she values at $250,000; and (4) lost profits, which she values at $175,000. The Leftons argue that Griffith's testimony describing these four types of economic damages is legally and factually insufficient.

### a. *Losses from Sale of Inventory and Sale of Home*

The Leftons first argue that Griffith's testimony describing the alleged losses from the sale of her inventory and home is legally and factually insufficient. Griffith's affidavit provides:

> My inventory at the time of the forced sale was worth $300,000. I was forced to sell my entire inventory for only $10,000 to the only company that offered me a bid. Therefore, I lost $290,000 because the Defendants broke their promise and locked me out of the Premises and forced me to sell my inventory.
>
> . . . .
>
> Moreover, because the failure of my business deprived me of my only source of income, I was unable to pay my personal creditors. As a result, I was soon forced to sell my house, at a greatly reduced price, in an attempt to pay my business suppliers and personal creditors. Because the Defendants' actions placed me in a position where I needed cash quickly in order to satisfy some of my creditors, I was forced to sell my personal residence as quickly as possible, which resulted in a loss of $60,000 on the sale of my house.

Citing *Porras v. Craig,* 675 S.W.2d 503 (Tex.1984), the Leftons argue that the above testimony is incompetent because it fails to refer to market value. In *Porras,* a case based on permanent damage to land, the court reversed an award of damages where the owner failed to testify to the market value of his property. *Id.* at 504. In *Porras,* however, "the owner's testimony affirmatively showed that he referred to personal rather than market value." *Id.* at 505. Here, Griffith's testimony does not affirmatively show that she was referring to personal rather than market value. Thus, this case is distinguishable from *Porras* on this basis. In fact, *Porras* affirms the general rule that "an owner is qualified to testify about the market value of his property." *Id.* Because, therefore, an owner is qualified to testify about the market value of his property, and because Griffith's testimony does not affirmatively show that she was referring to personal rather than market value, we overrule this argument on appeal.

■ The Leftons also argue that the above testimony is incompetent because it is conclusory. There is no evidence, they argue, that the inventory Griffith sold for $10,000 was actually worth $300,000. We agree. Documents that represent merely conclusory allegations will not support an amount awarded for unliquidated damages. *Jones v. Andrews,* 873 S.W.2d 102, 107 (Tex.App.-Dallas 1994, no writ). Here, Griffith's allegations fail to provide a factual basis to support her conclusion. We do not know, for example, the type of furniture or even the amount of furniture she sold. As such, we have no factual basis upon which to affirm her conclusion. *See Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984) (holding that affidavits consisting only of conclusions are insufficient to raise an issue of fact). Accordingly, we hold that the evidence of loss from the sale of inventory is legally insufficient to support an award for damages.

■ The testimony regarding the sale of her home is equally conclusory. As the owner of her home, Griffith is clearly qualified to testify about the value of it. *Porras,* 675 S.W.2d at 505. Because, however, she fails to explain how she arrived at the conclusion that she lost $60,000 from having to sell her home to pay her creditors, we have no way of knowing what she based her conclusion on. Her estimate could be purely speculative. "There can be no recovery for damages which are speculative or conjectural." *Roberts v. U.S. Home Corp.,* 694 S.W.2d 129, 135 (Tex.App.-San Antonio 1985, no writ) (reversing a default judgment award for damages to credit reputation). Accordingly, we hold that the evidence of loss from the sale of Griffith's home is legally insufficient to support an award of damages.

*b. Damage to Credit Reputation*

■ The Leftons next argue, and Griffith concedes, that Griffith's testimony regarding her damage to credit reputation is incompetent. Griffith's affidavit provides:

> Further, as a result of the loss of my business, which was caused by the Defendants, my credit reputation was ruined because I was unable to pay my bills as they came due. This injury was a natural, probable, and foreseeable consequence of the Defendants' wrongful conduct. This injury to credit rating has caused extreme hardship over the past two years and will continue to cause hardship into the foreseeable future. I believe that this loss of credit rating has damaged me in the amount of $250,000.

Texas law provides that in order to recover actual damages for loss of credit reputation, a plaintiff must first show that a loan was actually denied or a higher interest

rate charged. *St. Paul Surplus Lines Ins. Co. v. Dal–Worth Tank Co.*, 974 S.W.2d 51, 53 (Tex.1998). Here, Griffith failed to allege any such fact. Again, "[t]here can be no recovery for damages which are speculative or conjectural." *Roberts*, 694 S.W.2d at 135. Accordingly, we hold that the evidence of damage to credit reputation is legally insufficient to support an award of damages.

#### c. Lost Profits

 The Leftons also argue that Griffith's testimony regarding lost profits is incompetent. Griffith's affidavit provides:

> Because I was forced to sell my entire inventory to a competitor for a fraction of its value, I[had]. insufficient cash to pay my suppliers and other creditors, ruining my valuable trade relationships. Therefore, as a result of Defendants' actions, Discount Furniture Warehouse went out of business permanently. I have been in business for eight (8) years and probably would have been in business for at least five more years, probably more. I personally earned net profit of approximately $35,000 per year from the business. Therefore, I believe I am entitled to lost profits equal to that same income for the next five years, or $175,000.

 Recovery for lost profits does not require that the loss be susceptible to exact calculation. *Tex. Instruments, Inc. v. Teletron Energy Mgmt., Inc.*, 877 S.W.2d 276, 279 (Tex.1994). However, the injured party must do more than show that it suffered some lost profits. *Id.* The loss amount must be shown by competent evidence with reasonable certainty. *Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex.1994); *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex.1992). This is a fact-intensive determination. *Heine*, 835 S.W.2d at 84. At a minimum, opinions of lost-profit estimates

must be based on objective facts, figures, or data from which the lost-profits amount may be ascertained. *Szczepanik*, 883 S.W.2d at 649; *Heine*, 835 S.W.2d at 84. Although supporting documentation may affect the weight of the evidence, it is not necessary to produce in court the documents supporting the opinions or estimates. *Heine*, 835 S.W.2d at 84.

Here, Griffith's affidavit fails to provide a factfinder with sufficient data to determine her lost profits with reasonable certainty. Her "bare assertion" that she expected to make $35,000 in profit for the next five years because she made $35,000 in profit for the past eight years does not demonstrate a reasonably certain objective determination of lost profits. *See Heine*, 835 S.W.2d at 85 ("[T]he bare assertion that contracts were lost does not demonstrate a reasonably certain objective determination of lost profits."). In fact, though she attributes her financial woes to "seasonal difficulties," the fact that she could not pay her rent undermines that conclusion. We hold that the evidence of lost profits is legally insufficient to support an award of damages.

#### 2. Mental Anguish

 The trial court awarded Griffith $290,000 in mental anguish damages. The Leftons argue that Griffith's affidavit does not support such an award. Griffith's affidavit provides:

> As a result of Defendants' actions, I had irate customers calling my home and coming by my house at all hours of the day and night. I suffered severe emotional distress and mental anguish as a result of numerous encounters with angry, frustrated customers whom I was unable to help. As a result of Defendants' intentionally cruel actions, I was unable to sleep, was depressed, and suf-

fered from anxiety. Because I believe that the emotional injury I suffered was just as devastating as the loss of my business inventory, I believe that my damages for emotional and mental anguish also equal $290,000.

■ Mental anguish damages are appropriate when there is *either* "direct evidence of the nature, duration, and severity of [plaintiffs'] mental anguish, thus establishing a substantial disruption in the plaintiffs' daily routine," *or* other evidence of "a high degree of mental pain and distress" that is "more than mere worry, anxiety, vexation, or anger." *Saenz v. Fid. & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex.1996) (citing *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex.1995)). Here, Griffith does not establish the duration of her anguish. It is not clear how long she "was unable to sleep, was depressed, and suffered from anxiety."

Because Griffith does not establish "the nature, duration, and severity of mental anguish," she must show other evidence of "a high degree of mental pain and distress." *Parkway*, 901 S.W.2d at 444. Additionally, "the absence of [evidence of the nature, duration, and severity of mental anguish], particularly when it can be readily supplied or procured by the plaintiff, justifies close judicial scrutiny of other evidence offered on this element of damages." *Id.*

■ Texas law also provides:
Not only must there be evidence of the existence of compensable mental anguish, there must also be some evidence to justify the amount awarded.... While the impossibility of any exact evaluation of mental anguish requires that juries be given a measure of discretion in finding damages, that discretion is limited. Juries cannot simply pick a number and put it in the blank. They must find an amount that, in the stan-

dard language of the jury charge, "would fairly and reasonably compensate" for the loss.... Reasonable compensation is no easier to determine than reasonable behavior—often it may be harder—but the law requires factfinders to determine both.

*Saenz*, 925 S.W.2d at 614.

Thus, Griffith must show: (1) that she suffered a high degree of mental pain and distress; and (2) that $290,000 is a fair and reasonable amount for the mental anguish she suffered. Here, Griffith's testimony that she "was unable to sleep, was depressed, and suffered from anxiety" fails to establish either. Griffith's distress, while understandable, "does not rise to the level of compensable mental anguish" as defined by Texas law. *Id.* Additionally, there is no evidence that $290,000 "is fair and reasonable compensation" for the amount she suffered. *Id.* Accordingly, we hold that the evidence of mental anguish is legally insufficient to support an award of damages.

### 3. Attorney Fees

■ The trial court awarded Griffith $2,000 in attorney fees. On appeal, the Leftons argue that there is insufficient evidence of attorney fees because the only reference to attorney fees in the record is unsworn statements by counsel during the hearing. The Leftons fail, however, to cite authority for this proposition. TEX.R.APP. P. 38.1(h). Additionally, the Texas Civil Practices and Remedies Code provides: "The court may take judicial notice of the usual and customary attorney's fees and of the contents of the case file without receiving further evidence in a proceeding before the court." TEX. CIV. PRAC. & REM.CODE § 38.004(1) (Vernon 1997). Moreover, "[e]ven if the trial court did not state that it was taking such judicial notice, [the ap-

pellate court] may presume that the trial court did so." *Inwood Dad's Club, Inc. v. Aldine Indep. Sch. Dist.*, 882 S.W.2d 532, 542 (Tex.App.-Houston [1st Dist.] 1994, no writ). Here, the proceeding was before the court. Additionally, although the trial court did not state that it was taking judicial notice, we may presume that it did. *Id.* Accordingly, we hold that the evidence of attorney fees is legally and factually sufficient to support the award.

## II. Return of Service

 The Leftons argue that the default judgment as to David Lefton must be set aside because "although the return [of service] bears a file stamp indicating that it was filed on November 14, 2002, the file stamp has not been signed by a representative of the District Clerk's Office." The Leftons fail to cite, however, any case law for the proposition that a file stamp is not valid if it is not signed by a representative of the district clerk's office. Accordingly, the Leftons failed to properly brief this issue. TEX.R.APP. P. 38.1(h).

Additionally, their argument is without merit. Here, the stamp shows that David Lefton was served on November 14, 2002. The default judgment was granted November 25, 2002. Accordingly, the return of service was on file for ten days before the default judgment was granted. *See* TEX.R. CIV. P. 107 ("No default judgment shall be granted in any cause until the citation . . . with proof of service as provided by this rule . . . shall have been on file with the clerk of the court ten days, exclusive of the day of filing and the day of judgment."). Because the Leftons provide no authority for their argument, and because the return of service was on file for ten days before the default judgment was granted, we overrule this issue on appeal.

## CONCLUSION

Because there is insufficient evidence to support an award of damages for Griffith's loss from the sale of her inventory, loss from the sale of her home, lost profits, and damage to credit reputation, we reverse the trial court's award for economic damages and remand this cause for a new trial on economic damages. *See Heine,* 835 S.W.2d at 86 (holding that when damages awarded in a default judgment after an uncontested hearing are supported by either legally or factually insufficient evidence, we must remand the case for a new trial on those damage issues); *Jackson v. Gutierrez,* 77 S.W.3d 898, 904 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (reversing and remanding the trial court's awards for medical expenses, mental anguish, pain and suffering, and automobile repair, and affirming the award for lost wages).

Because there is insufficient evidence to support an award of damages for Griffith's mental anguish, we reverse the trial court's award for mental anguish and remand the cause for a new trial on mental anguish damages. *See Heine,* 835 S.W.2d at 86.

We affirm the trial court's award for attorney fees.