# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-05-00110-CV

**James E. Cox; James E. Cox d/b/a European Import Car Repair; and European Import Car Repair, Inc., Appellants**

**v.**

**Doug Wilkins, CPA, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY
### NO. 278796, HONORABLE ORLINDA L. NARANJO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellants James E. Cox and European Import Car Repair, Inc. (collectively "Cox"), challenge only the trial court's award of attorney's fees to appellee Doug Wilkins. Cox hired Wilkins to prepare income tax returns for himself and his corporate business, but did not pay Wilkins for his services. After unsuccessful attempts at collecting the debt and settling the dispute, Wilkins brought suit alleging breach of contract, quantum meruit and promissory estoppel. The trial court awarded Wilkins actual damages and attorney's fees. Cox does not appeal the damages awarded, but in his first three issues on appeal he contends that the trial court erred by (1) allowing Wilkins to reopen his case to present evidence of attorney's fees, (2) admitting a detailed invoice describing Wilkins's time and charges in the matter, and (3) awarding attorney's fees without taking judicial notice of the usual and customary attorney's fees for this type of case. In issues four through eight,

Cox challenges the sufficiency of the evidence supporting the trial court's award of attorney's fees. In issues nine and ten, Cox insists that the trial court's final judgment assesses liability against a non-existent party. In his final issue, Cox claims that the trial court erroneously awarded post-judgment interest prior to the date on which the final judgment was rendered. We will modify the judgment and affirm it as modified.

## BACKGROUND

James Cox is the president of European Import Car Repair, Inc. In 2002, Cox hired Doug Wilkins, CPA, to prepare and file his individual income tax return and the corporate income tax return for his business for 2001. Wilkins charged Cox approximately $3,300 to complete both returns. Cox testified that he was surprised by the amount of the bill because in the past he had paid substantially less. Wilkins explained to Cox that the corporation's books were not in order and consequently it took extra time to prepare the forms. Cox acknowledged that the bookkeeping discrepancies could have been due to a recent fire at his business, or to the fact that a former employee had been embezzling funds from the corporation. Cox also asserted that Wilkins took time to teach the corporation's bookkeeper how to properly categorize expenses so that the following year's taxes could be prepared more efficiently. Despite his reservations, Cox paid Wilkins the amount billed for his services.

The following year, Cox again hired Wilkins to prepare and file his individual and corporate income tax returns for 2002. Wilkins testified that he sent Cox a bill for his services around the end of May 2003; Wilkins charged $3,200, $450 for preparation of the individual return and $2,750 for the corporate return. When Cox did not respond, Wilkins sent a second invoice in

2

August 2003. On both bills, Wilkins noted that the "invoices are seriously past due." Again, Cox failed to respond.

In December 2003, Wilkins sent Cox two final demand notices, one for the individual return and the other for the corporate return. Cox testified that in January 2004 the parties agreed to settle the dispute for $1,950—$450 for the individual income taxes and $1,500 for the corporate income taxes. Cox then sent Wilkins two checks, a personal check for $450 and a corporate check for $1,500. Wilkins admits that Cox did tender these two checks to Wilkins's attorney, J.P. Cody, who drafted a settlement agreement and sent it to Cox on February 6, 2004. Cox insisted at trial that he signed the agreement and faxed it back to Wilkins's attorney that day. Wilkins maintained that neither he nor Cody ever received the signed agreement. Diana Anderson, Cody's paralegal, testified that in early February 2004, Cox telephoned to complain that the settlement agreement was not in proper form and had to be renegotiated. On February 11, Anderson e-mailed Cody that Cox had called to say that the agreement incorrectly named the parties, the time period for settlement had passed, and the settlement agreement had to be renegotiated. Anderson's e-mail was admitted into evidence at trial. In response, Wilkins filed suit.

Initially, Cox did not obtain counsel. Between January 2004 and August 2004, Cox made several phone calls to Cody's office and sent a series of letters in which he accused Wilkins of overcharging him for the tax preparation services. He also threatened to file a complaint with the Attorney General's office and a counter-suit alleging violations of the deceptive trade practices act. Wilkins sought a temporary restraining order to enjoin Cox from publicly disparaging his reputation.

On August 4, 2004, Cox was notified that the case had been set for trial on August 12. Cox filed a motion for continuance alleging inadequate notice. On August 12, the trial court

held a hearing only on Wilkins's application for a temporary restraining order. At that hearing, Cox claimed that he could not proceed because his counsel, John Mead, was unavailable. However, the trial judge telephoned Mead and discovered that he had not been hired to represent Cox. At the trial judge's urging, Mead agreed to represent Cox from that date forward.

A bench trial was held in October 2004. After closing arguments, the trial judge asked the parties if they had agreed to submit evidence of attorney's fees by affidavit, as had been suggested earlier in the trial. Cox's attorney denied any such agreement. Wilkins asked to reopen on the issue of attorney's fees. Despite objection, the trial court allowed Wilkins to reopen for the "limited purposes of offering the attorney's fees." Cody testified that he had spent a total of 54 hours on the case incurring fees of $11,235. He then produced a detailed invoice which described each task performed, the amount of time spent, who performed the task (Cody or one of his paralegals), and the rate charged. Cox objected that Cody had not established that the document fell under the business record exception to the hearsay rule. The trial judge overruled the objection and admitted the invoice. Cody then testified:

> This has been a more difficult case than normally, I would expected. I've done a lot of work with collection cases. I've never had to go through I can't even say how may letters—I can, if you want me to count them—that I've had to write back and forth corresponding with the defense prior to obtaining an attorney. Once you did appoint an attorney, things did run smoothly, and we have, I think, cooperated with each other to that extent. I think, normally, I would not be asking for as high an attorney award, except for the conduct here of the Defendant.

On cross-examination, Cox asked Cody three questions regarding the initials by each entry on the invoice, but did not controvert the amount or the reasonableness of the fees alleged. However, Cox

4

continued to insist that the evidence remained insufficient to support an award of attorney's fees. The trial concluded and the court took the matter under advisement.

On November 3, 2004, the trial judge sent a letter to the parties advising them of her decision. The final judgment reflecting that decision was signed on November 30 and provided:

1. Plaintiff shall have judgment against Defendant James E. Cox, individually, for actual damages in the amount of $450, and interest on that amount at the annual rate of five (5%) percent from November 3, 2004, until paid in full; and

2. Plaintiff shall have judgment against Defendant James E. Cox dba European Import Car Repair & European Import Car Repair, Inc., for actual damages in the amount of $2,750, and interest on that amount at the annual rate of five (5%) percent from November 3, 2004, until paid in full; and,

3. Plaintiff shall have judgment against Defendants James E. Cox dba European Import Car Repair & European Import Car Repair, Inc. for reasonable and necessary attorney's fees in the amount of $8,535 for which the Defendants are equally responsible.

Cox filed a motion for remittitur and for new trial. The trial court denied both motions. This appeal followed.

## DISCUSSION

In eleven issues, Cox challenges the trial court's award of attorney's fees. We address each issue in turn.

**Motion to reopen**

In his first issue, Cox argues that the trial court erred by allowing Wilkins to reopen on the issue of attorney's fees because he failed to show due diligence or any of the required factors

to justify reopening. Rule 270 of the Texas Rules of Civil Procedure allows a trial court to permit additional evidence to be offered at any time "when it clearly appears to be necessary to the due administration of justice." Tex. R. Civ. P. 270. A trial court should exercise its discretion liberally in the interest of justice so that both parties are permitted to fully develop their case. *Naguib v. Naguib*, 137 S.W.3d 367, 372 (Tex. App.—Dallas 2004, pet. denied). Unless the trial court has clearly abused its discretion, an appellate court should not disturb its refusal to reopen a case for the purpose of admitting additional evidence. *Id*.

In determining whether to permit additional evidence, a trial court may consider the following factors: (1) the moving party's due diligence in obtaining the evidence; (2) the decisiveness of the proffered evidence; (3) any undue delay the reception of the evidence could cause; and (4) any injustice the granting of the motion could cause. *Id*. at 373. Where these factors are present, it may be a trial court's duty to grant a party's motion to offer additional evidence. *Id*. These are just factors to be considered, and even if all of the factors are not satisfied, a trial court's ruling on a party's motion to reopen the evidence should not be disturbed. *Id*.

Cox contends that Wilkins failed to present evidence on any of the required factors to reopen under rule 270. However, rule 270 does not explicitly set forth any factors necessary to reopen a case; instead it places the decision to reopen within the trial court's discretion. *See* Tex. R. Civ. P. 270 (providing that court *may* permit additional evidence to be offered at any time). Wilkins requested attorney's fees in his original petition. He also discussed attorney's fees in his opening statement at trial and Cox responded during his opening argument. The trial judge noted that it should not come as a surprise to Cox that Wilkins was seeking attorney's fees. The trial judge

limited the presentation of new evidence to the issue of attorney's fees. Finally, the additional testimony spanning only six pages of the reporter's record, caused no undue delay to the parties. Accordingly, we hold that the trial court did not abuse its discretion by allowing Wilkins to reopen on the sole issue of attorney's fees.

**Business records**

In his second issue, Cox insists that the trial court erred by admitting the invoice detailing the time spent on the case by Wilkins's attorney or his paralegals, the tasks performed, and the corresponding rate charged. Cox claims that Wilkins failed to lay the proper predicate for admission of the invoice as a business record.

In reviewing a trial court's decision to admit evidence, we utilize an abuse of discretion standard. *See In re J.F.C.*, 96 S.W.3d 256, 285 (Tex. 2002); *National Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527-28 (Tex. 2000). A trial court abuses its discretion when it rules without regard for any guiding rules or principles. *Owens-Corning Fiberglass Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). We must uphold a trial court's evidentiary ruling if there is any legitimate basis for the ruling. *Id.* "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tex. R. Evid. 801(d). The proponent of hearsay has the burden of showing that the testimony fits within an exception to the general rule prohibiting the admission of hearsay evidence. *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 908 n.5 (Tex. 2004).

Rule 803(6) of the Texas Rules of Evidence, the business records exception, provides that evidence meeting the following criteria should not be excluded under the hearsay rule:

7

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by affidavit that complies with Rule 902(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. "Business" as used in this paragraph includes any and every kind of regular organized activity whether conducted for profit or not.

Thus, the foundation for the business records exception has four requirements: (1) the records were made and kept in the course of a regularly conducted business activity, (2) it was the regular practice of the business activity to make the records, (3) the records were made at or near the time of the event that they record, and (4) the records were made by a person with knowledge who was acting in the regular course of business. *Powell v. Vavro, McDonald, & Assocs., L.L.C.*, 136 S.W.3d 762, 765 (Tex. App.—Dallas 2004, no pet.); *Daimler-Benz Aktiengesellschaft v. Olson*, 21 S.W.3d 707, 716 (Tex. App.—Austin 2000, pet. dism'd w.o.j.).

Wilkins's attorney, J.P. Cody, testified that (1) the spreadsheet "is a printout of the records . . . prepared in the ordinary course of business;" (2) the records "include data entries that I personally give to the administrative assistant who then enters them into the record;" (3) "I personally have approved the entries;" and (4) "I have personal knowledge about the time and the records that are listed because those are my descriptions, what I have done for each period of time." On this record, we hold that the trial court did not abuse its discretion in finding that this testimony meets the requirements of Texas Rule of Evidence 803(6).

8

**Judicial notice**

In his third issue, Cox contends that the trial court erred in awarding attorney's fees without taking judicial notice of usual and customary fees prior to signing the final judgment. Cox claims that the trial court could not have taken judicial notice here because it did not inform the parties it was doing so and that due process required the trial court to notify the parties if judicial notice had been taken.

Generally, a trial court may take judicial notice of certain facts, whether requested or not. Tex. R. Evid. 201(c). A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. *Id*. at 201(e). However, Wilkins's claim was made under the civil practices and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (West 1997) (providing that party may recover reasonable attorney's fees . . . if claim is for: . . . (8) an oral or written contract). The civil practices and remedies code contains a more specific judicial notice provision: "The court may take judicial notice of the usual and customary attorney's fees and of the contents of the case file without receiving further evidence in a proceeding before the court." *Id*. § 38.004(1) (West 1997). We may presume that the trial court took judicial notice of the usual and customary fees pursuant to section 38.004 of the civil practices and remedies code even if it did not state that it was doing so. *See Lefton v. Griffith*, 136 S.W.3d 271, 279-80 (Tex. App.—San Antonio 2000, no pet.).

Because civil practices and remedies code section 38.004 is more specific than evidence rule 201, it controls in all claims for attorney's fees made under chapter 38 of the civil practices and remedies code. *See Sultan v. Mathew*, 178 S.W.3d 747, 751 (Tex. 2005) (noting

9

principle that specific statutes control over general ones); *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 901 (Tex. 2000). Accordingly, we hold that the trial court was not required by statute or rule to give notice that it was taking judicial notice of usual and customary attorney's fees.

We may presume that the trial court took judicial notice of usual and customary attorney's fees. *Lefton*, 136 S.W.3d at 279-80. There is no due process concern in the failure of the trial court to inform the parties that it was taking judicial notice of such fees because section 38.004 of the civil practices and remedies code explicitly informs litigants that a court may do so in a claim for attorney's fees brought under chapter 38. Therefore, due process was not violated and the trial court did not err by awarding attorney's fees on this record.

**Attorney's fees**

In issues five through seven, Cox challenges the sufficiency of the evidence supporting the trial court's award of attorney's fees.[1] Specifically, he contends that Wilkins presented no evidence establishing that the attorney's fees were both reasonable and reasonable for Travis County. He avers further that even if the record contains some evidence pertaining to the reasonableness of the attorney's fees, it is insufficient to support the trial court's award. In issue eight, Cox contends that if there is sufficient evidence to support an award of attorney's fees, the trial court's award is excessive.

---

[1] In issue four, Cox argues that there is no evidence to support the award of attorney's fees because Wilkins's attorney's invoice was improperly admitted. We have held that the trial court did not abuse its discretion by admitting the invoice and need not address this issue.

10

Generally, we review a trial court's decision to grant or deny attorney's fees for an abuse of discretion, and we review the amount awarded as attorney's fees under a sufficiency of the evidence standard. *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998); *EMC Mortgage Corp. v. Davis*, 167 S.W.3d 406, 418 (Tex. App.—Austin 2005, pet. filed). A trial court abuses its discretion if its decision "is arbitrary, unreasonable, and without reference to guiding principles." *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997) (quoting *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996)). It is an abuse of discretion to award attorney's fees if there is no evidence or insufficient evidence to support the award. *Bocquet*, 972 S.W.2d at 21.

In *Bocquet*, the supreme court distinguished between statutes that vest a trial court with the discretion to award attorney's fees and statutes that require the court to award attorney's fees. *See id*. at 20; *compare* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 1997) (court may award reasonable and necessary attorney's fees), *with* Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (person may recover attorney's fees). Statutes stating that a court "may" award attorney's fees give courts the discretion to award attorney's fees, but statutes stating that a party "may recover," "shall be awarded," or "is entitled to" attorney's fees are not discretionary. *Bocquet*, 972 S.W.2d at 20.

Because section 38.001(8) of the civil practices and remedies code specifies that a party "may recover reasonable attorney's fees . . . if the claim is for an oral or written contract," the award is not discretionary. Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8); *Bocquet*, 972 S.W.2d at 20. We need only determine if there is sufficient evidence that the fees awarded were reasonable.

The supreme court has identified various factors to consider when determining what a reasonable award of attorney's fees should be. They include the following: (1) the time and labor

11

required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). Not all of the factors must be considered in every case. *Petco Animal Supplies, Inc. v. Schuster*, 144 S.W.3d 554, 567 (Tex. App.—Austin 2004, no pet.). They are general guidelines that the supreme court has stated should be taken into account when determining the reasonableness of attorney's fees. *Id*. Evidence of attorney's fees that is clear, direct, and uncontroverted is taken as true as a matter of law, especially where the opposing party had the means and opportunity of disproving the evidence but did not. *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990).

In a challenge to legal sufficiency, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable fact finder could do so and disregard contrary evidence unless a reasonable fact finder could not. *Id*. at 827. The evidence is legally sufficient if it would enable fair-minded people to reach the verdict under review. *Id*.

12

In reviewing the factual sufficiency of the evidence, we consider and weigh all the evidence and should set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We may not substitute our own judgment for that of the trier of fact, even if we would have reached a different result on the evidence. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998). Therefore, we will reverse only if the overwhelming weight of the evidence indicates the trial court's judgment was clearly wrong and unjust.

Here, Wilkins requested $11,235.57 in attorney's fees. In support, he admitted his attorney's detailed invoice which explicitly described each task performed while working on the case, the amount of time spent on each task, whether the task was performed by the attorney or one of his paralegals, and the hourly rate charged for each. Wilkins's attorney also testified that he spent more time than he would have expected on a collection case of this type because Cox acted *pro se* for much of the underlying proceedings. The record also indicates that Cox's behavior, such as lying to the court in seeking a continuance, resulted in a waste of resources. As stated earlier, the trial court may take judicial notice of usual and customary attorney's fees under these circumstances and that we may presume that it did so. Tex. Civ. Prac. & Rem. Code Ann. § 38.004; *Lefton*, 136 S.W.3d at 279-80. Additionally, civil practices and remedies code section 38.003 states, "It is presumed that the usual and customary attorney's fees for a claim of the type described in Section 38.001 are reasonable." Tex. Civ. Prac. & Rem. Code Ann. § 38.003 (West 1997). Cox did not put forth any contrary evidence indicating that the fees Wilkins's attorney charged were excessive or unreasonable for Travis County. Nor did he attempt to rebut the presumption that the usual and

13

customary attorney's fees were reasonable. Cox merely argues that Wilkins failed to prove reasonableness and that the trial court's award of attorney's fees is excessive for this simple and uncomplicated debt collection case.

Ultimately, the trial court awarded Wilkins $8,535 in attorney's fees, approximately $2,700 less than he requested. We recognize that Wilkins did not put forth any evidence indicating that the legal fees requested were similar to those customarily charged for equivalent legal services provided in Travis County. However, a trial court need not consider every *Arthur Andersen* factor when determining reasonableness of attorney's fees. *Petco Animal Supplies*, 144 S.W.3d at 567. Viewing the evidence in the light most favorable to the trial court's award of attorney's fees, we find it sufficient to enable fair-minded people to reach a similar conclusion. *City of Keller*, 168 S.W.3d at 822, 827 (summarizing legal sufficiency standard of review). Moreover, after reviewing all of the evidence and considering the *Arthur Andersen* factors we cannot conclude that the trial court's attorney's fees award is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain*, 709 S.W.2d at 176 (summarizing factual sufficiency standard of review). Accordingly, we hold that legally and factually sufficient evidence supports the trial court's award of attorney's fees. Cox's fifth, sixth, seventh and eighth issues are overruled.

**Erroneous judgment**

In issues nine and ten, Cox claims that the trial court erred in entering judgment against James E. Cox d/b/a European Import Car Repair for actual damages and attorney's fees because there is either no evidence or insufficient evidence that the "party existed or was liable."

14

Wilkins sued Cox, individually, and the corporate entity European Import Car Repair, Inc. In his original petition, Wilkins alleged that he performed services for "James E. Cox d/b/a European Import Car Repair." Wilkins also alleged that European Import Car Repair, Inc., was Cox's alter ego; however, he did not produce any evidence at trial in support of such an allegation. After reviewing the record, we find that there is no evidence to support a corporate veil-piercing theory such as alter ego. Nor was there evidence that European Import Car Repair, Inc., operated as any business entity other than a validly incorporated Texas corporation. Therefore, there was no basis upon which the trial court could render judgment against "James E. Cox d/b/a European Import Car Repair."

On appeal, neither Cox nor European Import Car Repair, Inc., challenges their own liability. Accordingly, we modify the trial court's judgment to strike any reference to James E. Cox d/b/a European Import Car Repair. *See* Tex. R. App. P. 43.2(b).

**Post-judgment interest**

In his eleventh issue, Cox asserts that the trial court erred in ordering post-judgment interest at the annual rate of five percent to run from November 3, 2004, because the judgment was not signed until November 30, 2004.

In this case, the finance code governs the accrual of post-judgment interest. *See Office of the Attorney Gen. v. Lee*, 92 S.W.3d 526, 528 n.2 (Tex. 2002). Finance code section 304.005 states that "post-judgment interest on a money judgment of a court in this state accrues during the period beginning on the date the judgment is rendered and ending on the date the judgment is satisfied." Tex. Fin. Code Ann. § 304.005(a) (West Supp. 2005). Generally, a judgment

15

is rendered when the decision is officially announced orally in open court, by memorandum filed with the clerk, or otherwise announced publicly. *Garza v. Texas Alcoholic Beverage Comm'n*, 89 S.W.3d 1, 6 (Tex. 2002). An intent to render judgment in the future does not satisfy this test. *Woods v. Woods*, 167 S.W.3d 932, 933 (Tex. App.—Amarillo 2005, no pet.).

The trial court's docket sheet entry on November 3 notes, "COURT RULES IN FAVOR OF PLTF. [Wilkins] ORDER FORTHCOMING. SENT BY FAX & MAIL TO BOTH PARTIES." There is no indication on the docket sheet that the trial court filed with the clerk a copy of either the letter or the facsimile containing its decision. The trial court's decision was not orally announced in open court and the only written reflection of the trial court's decision is the November 3 docket entry. However, the November 3 docket entry explicitly states that the order is forthcoming. This language suggests that the court intended to render judgment in the future. This suggestion is bolstered by the November 30 docket entry stating, "FINAL JUDGMENT AFTER NON JURY TRIAL." In addition, the trial court signed the final judgment on November 30. "When there is a question concerning the date judgment was rendered, the date the judgment was signed prevails over a conflicting docket sheet entry." *In re R.A.H.*, 130 S.W.3d 68, 69-70 (Tex. 2004) (quoting *Garza*, 89 S.W.3d at 7). Therefore, we hold that the trial court's final judgment was rendered on November 30. Accordingly, we modify the judgment to reflect that post-judgment interest begins to accrue on November 30, not November 3. Tex. R. App. P. 43.2(b). The modified judgment should read as follows:

    1.    Plaintiff shall have judgment against Defendant James E. Cox, individually, for actual damages in the amount of $450, and interest on that amount at the annual

16

rate of five (5%) percent from ~~November 3, 2004,~~ <u>November 30, 2004</u>, until paid in full; and

2. Plaintiff shall have judgment against Defendant ~~James E. Cox dba European Import Car Repair &~~ European Import Car Repair, Inc., for actual damages in the amount of $2,750, and interest on that amount at the annual rate of five (5%) percent from ~~November 3, 2004,~~ <u>November 30, 2004</u>, until paid in full; and

3. Plaintiff shall have judgment against Defendants James E. Cox <u>individually</u> ~~dba European Import Car Repair~~ & European Import Car Repair, Inc. for reasonable and necessary attorney's fees in the amount of $8,535 for which the Defendants are equally responsible.

The stricken language has been removed from the judgment and the underlined language has been added in response to Cox's ninth, tenth and eleventh issues.

## CONCLUSION

We modify the trial court's judgment and affirm the judgment as modified.

_____

Bea Ann Smith, Justice

Before Justices B. A. Smith, Puryear and Pemberton

Modified and, as Modified, Affirmed

Filed: March 31, 2006