FRAUD-TECH V. CHOICEPOINT

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-150-CV

FRAUD-TECH, INC., DEAN MCGEE, APPELLANTS

AND ROBERT ANDREWS

V.

CHOICEPOINT, INC. F/K/A DATABASE APPELLEES

TECHNOLOGIES, INC. AND THE INFORMATION

CONNECTIVITY GROUP, INC.

------------

FROM THE 67TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellants Fraud-Tech, Inc., Dean McGee, and Robert Andrews appeal from a summary judgment in favor of appellees Choicepoint, Inc. f/k/a Database Technologies, Inc. (DBT) and The Information Connectivity Group, Inc. (ICON).
(footnote: 2)  In eight issues, appellants contend that the trial court erred by finding that no genuine issue of material fact existed as to McGee’s and Andrews’s damage claims for breach of contract, fraud, and conversion (issues one through five) and as to all appellants’ breach of contract implied in law claims
(footnote: 3) (issue six); that the trial court erred in denying appellants’ motion for continuance of the summary judgment hearing (issue seven); and that the trial court erred by denying appellants’ motion to compel further discovery (issue eight).  We affirm.

Background Facts

A detailed factual and procedural background of this case is set forth in this court’s prior opinion (
Fraud-Tech I
) addressing an August 8, 2001 summary judgment entered by the trial court on Fraud-Tech’s damage claims for breach of contract, fraud, and conversion.  
See Fraud-Tech, Inc. v. ChoicePoint, Inc.
, 102 S.W.3d 366, 371-73 (Tex. App.—Fort Worth 2003, pet. denied).  In summary, McGee and Andrews formed Fraud-Tech for the purpose of jointly developing and marketing a mortgage fraud protection system with DBT.  
Id
. at 371.  Although appellants and DBT entered into a nondisclosure agreement and letter of intent, and negotiated a licensing agreement, they never consummated the transaction.  
Id
.  Appellants eventually sued DBT and ICON, an affiliate of DBT, for breach of contract, fraud, conversion, and specific performance.  
Id
.  Appellees filed traditional and no-evidence motions for summary judgment, claiming that Fraud-Tech could not reliably prove damages on its causes of action for breach of contract, fraud, and conversion.  
Id
. at 372.  The trial court granted summary judgment as to all claims and all parties; however, appellees had not moved for summary judgment on McGee’s and Andrews’s claims against appellees, nor had they moved for summary judgment on Fraud-Tech’s breach of contract implied in law claim and its claim for specific performance.  
Id
. at 372-73, 385, 387.  Therefore, this court determined that summary judgment on those claims was improper and remanded those claims to the trial court.  
Id
. at 387-88.  This appeal arises out of the trial court’s disposition of those remaining claims.

Almost a year after this court issued mandate, appellees filed a motion for summary judgment on McGee’s and Andrews’s breach of contract, fraud, and conversion claims and on Fraud-Tech’s breach of contract implied in law claim.  The trial court granted the summary judgment in full on November 4, 2004.  Appellants nonsuited all remaining claims so that the summary judgment would be final.

Analysis

We will address appellants’ seventh and eighth issues first because they are potentially dispositive.  
See
 
Tex. R. App. P.
 47.1.

Motion for Continuance and to Compel Discovery Responses

In their seventh issue, appellants contend the trial court erred by denying their motion for continuance of the summary judgment hearing.  In their eighth issue, appellants contend that the trial court abused its discretion by denying their motion to compel further discovery.

On or about September 10, 2004, about eleven months after this court’s mandate had issued,
(footnote: 4) appellants served a second set of requests for production on DBT.  According to appellants, “[t]he purpose of these Requests was to confirm newly acquired information regarding . . . [DBT’s]  acquisition of an entity known as Mortgage Asset Research Institute (MARI) and the [hire] of its president/owner Jim Croft.”  Appellants allege that MARI has a mortgage fraud product similar to Fraud-Tech’s and that evidence about MARI’s viability could potentially be used to shore up its expert’s opinions on damages, which the trial court had previously excluded as unreliable.
(footnote: 5)
 DBT responded and objected to the requests on October 14, 2004, approximately two weeks after appellees filed their motion for summary judgment.
(footnote: 6)  DBT asserted two general objections to the entire set of requests.  Its first objection was that “the discovery period is over.  [The trial] Court’s Scheduling Order of February 2, 2001 established a discovery deadline of June 25, 2001. . . .  Moreover, [the trial] Court’s March 4, 2004 Order Setting Case for Trial . . . does not permit additional discovery.”  Its second general objection was that the requests were “overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  More specifically, these Requests have nothing to do with any claims that remain after the appeal, but rather relate to claims for money damages.”  DBT further objected to all but one of the requests on the ground that they were “duplicative of Requests previously served by [appellants] prior to the end of the discovery period; therefore [appellees] would refer [appellants] to its prior Response[s].”  

Appellants filed a motion for continuance of the summary judgment hearing and motion to compel discovery responses on October 19, 2004.  In the motion, appellants contended that they were “in need of additional discovery . . . . that is crucial to their case-in-chief.”  They also asked the trial court to modify its Order Setting Case for Trial to allow for the requested discovery. 

Appellees responded, claiming that the requested discovery was irrelevant in light of this court’s prior holding in 
Fraud-Tech I 
that Fraud-Tech’s damages evidence was unreliable and, therefore, no evidence.  They also contended that the requests were made outside the June 25, 2001 discovery deadline established by the trial court before the previous summary judgment and appeal.  Further, appellees resisted the discovery on the ground that the trial court’s March 4, 2004 Order Setting Case for Trial did not permit additional discovery.

The trial court heard the continuance part of the motion on October 29, 2004, the day of the hearing on appellees’ summary judgment motion.  It denied the motion in its entirety on November 4, 2004, the same day it signed an order granting appellees’ motion for summary judgment. 

We review the trial court’s ruling on a motion for continuance for an abuse of discretion.  
Joe v. Two Thirty Nine Joint Venture
, 145 S.W.3d 150, 161 (Tex. 2004); 
Tri-Steel Structures, Inc. v. Baptist Found. of Tex.
, 166 S.W.3d 443, 447 (Tex. App.—Fort Worth 2005, pet. denied).  The supreme court has considered the following nonexclusive factors when deciding whether a trial court abused its discretion in denying a motion for continuance seeking additional time to conduct discovery:  the length of time the case has been on file, the materiality and purpose of the discovery sought, and whether the party seeking the continuance has exercised due diligence to obtain the discovery sought.  
Joe
, 145 S.W.3d at 161.

Here, the case had been pending for a year after this court issued its mandate when appellants first requested the trial court to allow the additional discovery.  No order existed allowing discovery during that one-year period.  And appellants offered no explanation for their delay in requesting the additional discovery, nor did they offer any explanation for their delay in seeking the additional discovery from DBT.
(footnote: 7)  Although appellants’ counsel contended at the hearing on the motion for continuance that the additional discovery was necessary so that appellants could re-examine the conclusions of appellees’ expert, Marta McCall, appellants had not requested that the trial court reconsider its ruling on the reliability of appellants’ experts, whom McCall had criticized.

We conclude that appellants did not show due diligence in requesting a continuance of the summary judgment hearing for additional discovery; thus, we hold that the trial court did not abuse its discretion in denying the motion for continuance.  We overrule appellants’ seventh issue.  Because we hold that the trial court did not abuse its discretion by denying appellants’ motion for a continuance to conduct further discovery, we also conclude and hold that the trial court did not abuse its discretion by denying appellants’ motion to compel.
(footnote: 8)  
See Piazza v. Cinemark, USA, Inc.
, 179 S.W.3d 213, 216 (Tex. App.—Eastland 2005, pet. denied) (holding that trial court did not abuse its discretion by denying motion to compel in part because appellant had already had ample time to conduct discovery). 

Appellees’ Motion for Summary judgment

In their first through sixth issues, appellants contend that the trial court erred by granting summary judgment for appellees on (1) McGee’s and Andrews’s breach of contract, fraud, and conversion claims and (2) appellants’ claims for breach of contract implied in law.  

Appellees filed a combined traditional and no-evidence motion for summary judgment.  They contended that they were entitled to summary judgment on McGee’s and Andrews’s claims because those claims “are completely derivative” of Fraud-Tech’s claims; thus, because the only evidence of Fraud-Tech’s damages was unreliable and therefore constituted no evidence of damages, McGee and Andrews had also failed to bring forward any evidence of damages.  In addition, appellees moved for summary judgment on appellants’ claims for breach of implied contract in law on the ground that the damages relating to that cause of action “would be identical to the damages relating to all the other causes of action for which [the first] summary judgment was affirmed on appeal” and that appellants have “no admissible evidence [i.e., no reliable evidence] of damages as to [the] newly-plead[ed] implied contract in law theory.”

Standard of Review

When a party moves for summary judgment under both rules 166a(c) and 166a(i), we will first review the trial court’s judgment under the standards of rule 166a(i).  
Ford Motor Co. v. Ridgway, 
135 S.W.3d 598, 600 (Tex. 2004).  If the appellants failed to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether appellee’s summary judgment proof satisfied the less stringent rule 166a(c) burden.  
Id.

Rule 166a(i) provides that after an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant’s claim or defense.  
Tex. R. Civ. P.
 166a(i).  The motion must specifically state the elements for which there is no evidence.  
Id.; Johnson v. Brewer & Pritchard, P.C., 
73 S.W.3d 193, 207 (Tex. 2002).  The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact.  
See
 
Tex. R. Civ. P.
 166a(i) & cmt.; 
Sw. Elec. Power Co. v. Grant, 
73 S.W.3d 211, 215 (Tex. 2002).

We review the evidence in the light most favorable to the party against whom the no evidence summary judgment was rendered.  
King Ranch, Inc. v. Chapman
, 118 S.W.3d 742, 751 (Tex. 2003), 
cert. denied
, 541 U.S. 1030 (2004); 
Johnson
, 73 S.W.3d at 197; 
Morgan v. Anthony
, 27 S.W.3d 928, 929 (Tex. 2000).  If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no evidence summary judgment is not proper.  
Moore v. K Mart Corp.
, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied).

Discussion

In response to appellees’ summary judgment motion, appellants presented the same evidence that they attached to their response to appellees’ prior summary judgment that was the subject of 
Fraud-Tech I
, with one exception:  a new affidavit from McGee with four exhibits attached, all of which attempted to show that appellants could prove damages.  Because the trial court had already determined that the expert testimony on damages presented in connection with the first summary judgment was unreliable—and appellants never asked the trial court to reconsider that ruling—we conclude that that evidence could not raise a fact issue as to appellants’ ability to prove damages on their claims
.  Thus, we must determine whether the new evidence presented by appellants was sufficient to raise a genuine issue of material fact as to McGee’s and Andrews’s ability to prove damages on all of their claims and Fraud-Tech’s ability to prove damages on its breach of contract implied in law claim.

In his new affidavit McGee averred that he had re-reviewed the affidavit of Marta McCall, appellees’ damages expert, and “current public information related to the mortgage industry and, in particular, Appentel, Affinity Corporation, Mortgage Asset Recovery Institute (MARI), and [DBT].”  McGee stated that these three companies own products similar to Fraud-Tech’s and explained in detail how the current viability and success of those companies’ products in the mortgage industry undercuts McCall’s prior testimony on appellants’ ability to prove damages.  But as this court explained in 
Fraud-Tech I
, appellants cannot shift the burden of proving the admissibility of their experts’ testimony to appellees.  
See Fraud-Tech
, 102 S.W.3d at 382.  Thus, instead of determining whether McGee’s new affidavit casts doubt on appellees’ expert’s testimony regarding damages, we must determine whether it brings forward any new evidence that would support appellants’ damages claims.

We agree with appellees that McGee’s affidavit testimony concerning the current viability and success of allegedly similar products, “at best, demonstrates the viability of [Fraud-Tech’s] competitors, but it does not demonstrate that the market share projections that the trial court found to be unreliable were, in fact, reliable.”  As this court noted in 
Fraud-Tech I
, the testimony of at least one of Fraud-Tech’s experts, Dr. Burkman, was unreliable in part because he had not considered the possibility that competing products might come online and actually reduce rather than increase Fraud-Tech’s market share.  
Id
. at 383.  McGee’s affidavit testimony attempts to show that Fraud-Tech’s product was viable and that it could have captured a measurable market share by showing that the companies referenced in his affidavit, which were also discussed and analyzed by the experts in the prior motion for summary judgment that was the subject of 
Fraud-Tech I
, have now attained success in the mortgage industry with their products.  But McGee also fails to address the effect that this competition would have had, if any, on appellants’ product.  Thus, his new affidavit testimony suffers from the same defect as appellants’ prior proferred expert testimony.  Accordingly, we conclude that appellants’ new responsive evidence does not raise a genuine issue of material fact on appellants’ damage claims.

In the last paragraph of his affidavit, McGee avers that appellants are entitled to reimbursement of out-of-pocket expenses of $24,000
(footnote: 9) on their breach of contract, fraud, and conversion claims.  However, this part of the affidavit is conclusory because it does not supply facts underlying its conclusions;
(footnote: 10) therefore, it constitutes no evidence of any additional damages.  
See Trejo v. Laredo Nat’l Bank
, 185 S.W.3d 43, 50-51 (Tex. App.—San Antonio 2005, no pet.); 
Lefton v. Griffith
, 136 S.W.3d 271, 277 (Tex. App.—San Antonio 2004, no pet.).

Because we determine that appellants failed to bring forward any evidence on damages as to their breach of contract implied in law claims and McGee’s and Andrews’s breach of contract, fraud, and conversion claims, we hold that the trial court did not err by granting the no-evidence summary judgment in favor of appellees.  We overrule appellants’ first through sixth issues.

Conclusion

Having overruled appellants’ eight issues, we affirm the trial court’s judgment.

TERRIE LIVINGSTON

JUSTICE

PANEL B: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

DELIVERED: April 20, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Thomas H. Hoolihan, Phillip Wamock, and Andrew Perlmutter, who, along with appellees, were also defendants below, filed their own motion for summary judgment, which the trial court granted.  Appellants have not appealed that summary judgment. 

3:
Appellants asserted other claims in their last live pleading on file, a Seventh Amended Original Petition and Application for Temporary Restraining Order and for Temporary Injunction, but after the trial court granted summary judgment to appellees, appellants nonsuited all of their remaining claims that were not disposed of in the summary judgment. 

4:
We issued mandate on October 24, 2003.

5:
We affirmed this finding in 
Fraud-Tech I
. 
 102 S.W.3d at 385.

6:
It is not clear from the record when the first set of requests for production was filed, but it appears from appellees’ responses and objections that the first set was filed before the first summary judgment in 
Fraud-Tech I
.  

7:
An article included in appellants’s summary judgment evidence shows that DBT acquired MARI on June 2, 2003. 

8:
Once the trial court determined that a motion for continuance was unwarranted, appellants’ motion to compel was essentially rendered moot.

9:
McGee contends that these expenses consist of attorney’s fees of approximately $2,500 for document review of the contracts entered into by appellants and appellees, $1,500 in attorney’s fees for an opinion under the Fair Credit Reporting Act, unspecified amounts for hotels, airline flights, and rental cars for trips McGee took to Florida in connection with Fraud-Tech’s initial dealings with appellees, and unspecified amounts for consulting fees for  development services appellants allegedly provided appellees in connection with Fraud-Tech’s product. 

10:
For example, in the affidavit, McGee avers that these out-of-pocket expenses were the direct result of appellees’ acts constituting breach of contract, fraud, and conversion; however, he fails to explain how these damages resulted from appellees’ actions.  Specifically, he fails to address the fact that appellants would have incurred these expenses regardless of appellees’ subsequent actions.