## TRI–STEEL STRUCTURES, INC., Appellant,

v.

## BAPTIST FOUNDATION OF TEXAS, Individually and as Trustee, Maurine P. Myers, Dorothy N. Myers And Mark A. Kuhn, Trustee of the Dewitt Luther Myers and Maurine Parker Myers Trust, Appellees.

No. 2–03–207–CV.

Court of Appeals of Texas, Fort Worth.

May 26, 2005.

William L. Wolf, P.C., William L. Wolf and Barton M. Reeder, Dallas, for Appellant.

Haynes and Boone, LLP, Georger Bramblett, Jr., Patrick D. Keating and Charles G. Orr, Dehay & Elliston, L.L.P., and Charlene R. Echols, Dallas, for Appellees.

Panel A: CAYCE, C.J.; WALKER and McCOY, JJ.

## OPINION

BOB McCOY, Justice.

### I. Introduction

Appellant Tri–Steel Structures, Inc. ("Tri–Steel") appeals from a final judgment granted to Appellees Baptist Foundation of Texas ("the Foundation"), individually and as trustee, Maurine P. Myers and Dorothy N. Myers (collectively

"Myers"), and Mark A. Kuhn ("Kuhn"), trustee of the Dewitt Luther Myers and Maurine Parker Myers Trust ("the Trust"). We will affirm.

## II. Factual Background

This case involves an attempted extension of a lease through a method of notice not in strict compliance with requirements under the lease. In 1982, Tri–Steel leased some real property in Denton County from Myers. The two lease agreements ("1982 leases") were for five years, with a five-year option-to-extend provision. After exercising the option, Tri–Steel occupied the property through 1992 under the 1982 leases and extension provisions. A new lease was negotiated in 1992 for the property that had a three-year term commencing September 1, 1992. An addendum to the 1992 lease allowed a three-year extension option at the end of the term.

On December 12, 1995, the parties executed an Amendment to Lease Agreement (the "Amendment"), amending certain provisions and extending the 1992 lease until August 31, 2000. The Amendment provided that any term of the 1992 lease not amended by the Amendment remained in effect. The Amendment also specified in part that "[i]n order to exercise this option [to extend the lease beyond August 31, 2000], [t]enant must give notice to [l]andlord in writing, by certified mail, on or before 90 days prior to the termination of the extended term."

Prior to the date of the Amendment, Myers and Tri–Steel had a history of not following the exact terms of their agreements with regard to written notifications and using certified mail but had on occasion acted more informally.

In August 1998, Myers transferred three-quarters' ownership interest in the property to the Foundation and the remaining one-quarter to the Trust administered by Kuhn. Following this transfer, the Foundation managed the property, served as landlord, and enforced the terms and conditions of the lease agreements more strictly than Myers. On May 8, 2000, approximately four months before the 1992 lease was to terminate, the Foundation sent Tri–Steel a letter indicating in part that it had "every intention of enforcing all the rights of the landlord under the lease." It is not disputed that Tri–Steel did not exercise its option to extend the 1992 lease by the method to which it had agreed—in writing by certified mail ninety days or more before the 1992 lease termination date.

## III. Procedural Background

After not receiving a written notice of extension in conformance with the literal terms of the Amendment, the Foundation filed an eviction lawsuit in Denton County after Tri–Steel allegedly refused to remove all its possessions from the property at the expiration of the lease, August 31, 2000. Following a jury verdict in favor of the Foundation, a writ of possession was issued and Tri–Steel was evicted from the property on October 30, 2000. Tri–Steel sued the Foundation in June 2001 and also filed lis pendens notices. Following the filing of the Foundation's original answer, Tri–Steel amended its petition on October 1, 2001, added Myers and Kuhn as defendants, and, *inter alia,* asserted that the Foundation breached the lease extension provision of the Amendment because Tri–Steel had properly exercised the lease extension option in conformance with its past dealings with the landlord. Tri–Steel also filed amended lis pendens. Myers and Kuhn answered on October 31, 2001. Following the filing of further lis pendens notices, the trial court lifted the notices and sanctioned Tri–Steel.

On November 2, 2001, the Foundation filed a motion for partial summary judgment on the issue of notice of lease extension. Shortly thereafter, Myers and Kuhn filed corresponding motions for partial summary judgment. On November 29, 2001, a hearing on the motions for partial summary judgment was held. Two days prior, the Foundation had filed its objections to Tri–Steel's response and summary judgment evidence that had been filed by Tri–Steel on November 26. Kuhn and Myers lodged identical objections the day of the hearing. At the conclusion of the hearing, Tri–Steel, which had sought no discovery to that point, requested a continuance to take three depositions to address the form and hearsay objections that Appellees had asserted to the evidence Tri–Steel had sought to introduce at the hearing. This motion was denied by the trial court, which also signed an order sustaining the majority of Appellees' objections to Tri–Steel's evidence. On December 12, 2001, the trial court granted the motions for partial summary judgment of the Foundation, Myers, and Kuhn. In October 2002, Tri–Steel declared bankruptcy, which stayed claims against Tri–Steel but did not affect Tri–Steel's prosecution of its remaining claims against the Foundation, Myers, and Kuhn. *See, e.g., In re United States Abatement Corp.*, 39 F.3d 563, 568 (5th Cir.1994). Finally, the trial court held a dismissal-for-want-of-prosecution hearing, at which Tri–Steel did not appear, resulting in the dismissal of Tri–Steel's remaining claims and a March 26, 2003 final judgment in favor of the Foundation, Myers, and Kuhn. Following the denial of a motion for new trial, Tri–Steel perfected this appeal.

## IV. Continuance

### A. Background

■ In its first issue, Tri–Steel asserts error on the part of the trial court in failing to grant its motion for continuance of the hearing on the Foundation/Myers/Kuhn motions for partial summary judgment. At the conclusion of the hearing, counsel for Tri–Steel stated, "I have got a motion for continuance that I must file so that I could take depositions. And these are all form objections and we would ask that—ask to file that." The court then stated, "Well, the motion for continuance is denied. You may file it, though." Subsequently, on November 29, Tri–Steel filed Plaintiff's Motion for Continuance, which, in part, stated as the reason for the continuance that the plaintiff be allowed

> to take the deposition of (i) Defendant Dorothy Myers, (ii) Jeff Smith, a representative of the Foundation and a recipient of a letter which is one of the Exhibits and (iii) Tom Hollanger, a representative of the Foundation, in order to cure the hearsay objections raised by the Foundation. Hearsay objections are objections to form. [Citation omitted.] Plaintiff must be given an opportunity to cure these defects in form before the Court rules on the motions for summary judgment.

No other reason for requesting a continuance was stated. The record does not reflect that this motion was granted, so it therefore was implicitly denied.

### B. Standard of Review

■ The denial of a motion for continuance is reviewed under an abuse of discretion standard. *General Motors Corp. v. Gayle*, 951 S.W.2d 469, 476 (Tex.1997) (orig.proceeding). The denial will be reversed if the trial court acted without regard to guiding principles or was arbitrary or unreasonable. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex.2002). In order for a continuance to

be granted, cause must be shown, supported by affidavit. TEX.R. CIV. P. 251. Further, if the basis for the requested continuance is "want of testimony," the affidavit must show (1) that the testimony is material, (2) that due diligence has been used to obtain the testimony, (3) that there is an explanation given for the failure to obtain the testimony, and (4) that the testimony cannot be procured from another source. TEX.R. CIV. P. 252.

## C. Analysis

Tri–Steel's Plaintiff's Motion for Continuance, when viewed in its entirety, does not meet requirements 2, 3, and 4 enumerated above. Further, the motion for continuance itself was not "in the required affidavit form" as asserted by Tri–Steel, nor was it supported by affidavit. Therefore, the motion for continuance did not meet the requirements of Rule 251 or 252.

Rule 166a(g) specifically allows a court to grant a continuance to permit depositions to be taken upon a showing that the requesting party "cannot for reasons stated present by affidavit facts essential to justify his opposition." TEX.R. CIV. P. 166a(g). However, this procedure was not utilized by Tri–Steel.

▮▮▮ Rule 166a(f) indicates that a party offering an affidavit that is defective in form, as pointed out by the opposing party, should have the "opportunity" to amend. TEX.R. CIV. P. 166a(f). Tri–Steel is correct that hearsay is a defect in form. A defect is substantive if the summary judgment proof is incompetent; it is formal if the summary judgment proof is competent, but inadmissible. *Trusty v. Strayhorn*, 87 S.W.3d 756, 764 (Tex.App.-Texarkana 2002, no pet.). Generally, a motion for continuance is the proper procedure to obtain this "opportunity." *Webster v. Allstate Ins. Co.*, 833 S.W.2d 747, 750 (Tex. App.-Houston [1st Dist.] 1992, no writ). If the "opportunity" is needed to take deposi-

tions, that is, for "want of testimony," the rule is silent as to whether a continuance motion must meet the requirements of Rule 252. TEX.R. CIV. P. 252. No case law appears to have addressed this specific issue. We hold that if additional evidence is requested to be submitted through the initiation of discovery for "want of testimony," (1) the summary judgment hearing must be continued to allow the new evidence to be presented to the court, and (2) a motion for continuance consistent with Rule 252 is required. *Id.* Otherwise, summary judgment affidavits would be replete with hearsay, with little impetus to obtain proper discovery before the hearing to avoid hearsay rulings.

On the other hand, if an amended affidavit is requested to be substituted for the affidavit already admitted (for example, the original affidavit omits one of the form requirements—the affiant is over the age of 18, the affidavit is based on personal knowledge, etc.) then the court may allow through a timely "request," as opposed through a motion for continuance, a corrected affidavit to be substituted for the previous affidavit already considered. This would not require the initiation of discovery or continuance of the hearing. This is consistent with the language of this court's holding in *Coleman v. Woolf,* 129 S.W.3d 744 (Tex.App.-Fort Worth 2004, no pet.), that

> [s]he did not request or file a motion for continuance; she did not tender an amended affidavit or seek leave to file an amended affidavit during the two weeks that the trial court had Dr. Wolf's motion for summary judgment under advisement. Coleman never made a timely *request*, objection, or *motion* seeking the opportunity to cure the defect. . . .

*Id.* at 750 (emphasis supplied). Under the facts before us, additional discovery in the

form of three depositions for Rule 252 "want of testimony" was sought, which required a formal motion for continuance meeting the requirements of Rule 252. We hold there was no abuse of discretion in the trial court's denial of the motion for continuance and overrule Tri–Steel's first issue.

## V. Affidavit Objections

### A. Exhibits C and I

In its second issue, Tri–Steel asserts that the trial court erred in sustaining certain objections to the affidavit of John Brown, filed in response to the Foundation/Myers/Kuhn motions. The only specific objections that Tri–Steel asserts as error by the trial court are in sustaining objections to Exhibit C (except paragraphs 5 and 6, which were admitted) and Exhibit I, both attachments to the Brown affidavit. Other general statements about objections are non-specific, vague, and not pointed out with sufficient clarity for this court to consider. *See* TEX.R.APP. P. 38.1(h). As a result, they are waived. Exhibit C is an unsigned September 5, 1985 letter from John Brown to Dorothy Myers. The stricken paragraphs concern an invitation to Myers to come out and view work occurring at the premises. The paragraphs concerning the lease and extension of the lease term were admitted by the trial court (paragraphs 5 and 6). Exhibit I is a December 3, 1998 letter, unsigned, from John Brown to Jeff Smith at the Foundation, and is a discussion of their lease, an offer to buy out its remaining term, and a proposal for the Foundation to finance a move by Tri–Steel to another location. Tri–Steel argues that Exhibits I and the stricken part of Exhibit C, although hearsay, met the hearsay exception of Texas Rules of Evidence 803(15), entitled "Statements in Documents Affecting an Interest in Property."

### B. Interest in Property—Evidentiary Rule 803(15)

At issue in this appeal is whether it was necessary for Tri–Steel to timely send a written notice of lease extension by certified mail to the Foundation consistent with the literal terms of the 1995 Lease Amendment. Tri–Steel argues that the parties have a course of dealing between them such that literal compliance with notice obligations between the parties had been unenforced and therefore the right to enforce the provision in question had been waived by the Foundation. Further, Tri–Steel urges that Exhibits I and C show this informal relationship between the parties and thusly affect Tri–Steel's interest in the leased property.

Another court has reviewed the history of Rule 803(15):

Texas Rule of Civil Evidence 803(15) [now Texas Rule of Evidence 803(15) ], effective in 1983, adopted the federal version of this evidence rule.... Federal Rule of Evidence 803(15) and Texas Rule of Civil Evidence 803(15) state:

Statements in Documents Affecting an Interest in Property. A statement contained in a document purporting to establish or affect an interest in property if the matter stated was relevant to the purpose of the document, unless dealings with the property since the document was made have been inconsistent with the truth of the statement or the purport of the document.

The advisory committee's note accompanying the federal rule explains the rationale for this rule. The note states that "[d]ispositive documents often contain recitals of fact ... [and the] circumstances under which dispositive documents are executed and the requirement that the recital be germane to the purpose of the document are believed to be

*adequate guarantees of trustworthiness* . . ." One federal court stated that recitals contained in documents affecting interests in property are admissible as proof of the matters asserted and are strong evidence concerning such matters. *Compton v. Davis Oil Co.,* 607 F.Supp. 1221, 1228 (D.C.Wyo.1985). This hearsay exception is based upon the reliability of such documents. *Id.* at 1229. In *Compton v. WWV Enterprises,* 679 S.W.2d 668, 671 (Tex.App.-Eastland 1984) no writ, the court of appeals construed Texas Rule 803(15) to relate to recitals or statements made in "deeds, leases, mortgages, *and other such 'documents affecting an interest in property'* ". (Emphasis supplied). Additionally, this Court has expressed that an exception to the hearsay rule should be liberally construed, but not mechanistically applied. *Coulter v. State,* 494 S.W.2d 876, 883 (Tex.Cr.App.1973) (interpreting business records exception).[1]

Other cases have discussed Rule 803(15)'s application to a variety of documents. *See, e.g., Guidry v. State,* 9 S.W.3d 133, 146–47 (Tex.Crim.App.1999), *cert. denied,* 531 U.S. 837, 121 S.Ct. 98, 148 L.Ed.2d 57 (2000) (*sworn* inventory of property *filed* in a divorce proceeding held to be admissible under 803(15)); *Harris v. State,* 846 S.W.2d 960, 964–65 (Tex.App.-Houston [1st Dist.] 1993, pet. ref'd) (statements in an *official* General Motors' Certificate of Origin regarding ownership of a vehicle were admissible under 803(15)). However, courts have not applied 803(15) to admit statements from documents that do not exhibit the same levels of reliability as found in formal or official documents or do not specifically meet the criteria of the rule. *See McCraw v. Maris,* 837 S.W.2d 646, 651 (Tex.App.-Dallas 1990), *rev'd on other grounds,* 828 S.W.2d 756 (Tex.1992) (refusing to admit an *unfiled* and *unwittnessed handwritten* insurance beneficiary designation form under 803(15)); *Compton v. WWV Enters.,* 679 S.W.2d 668, 671 (Tex. App.-Eastland 1984, no writ) (affidavit of heirship not admissible under 803(15)).

Predecessor statutes to the current version of Rule 803(15) allowed for an exception to the hearsay rule only for those documents that were recorded instruments.[2] At the time the federal courts adopted the rule corresponding to Texas Rule 803(15), the rule's scope was enlarged to include documents affecting an interest in property, even if unrecorded. However, the scope of the rule is not without limit, as stated in the advisory committee's notes to the federal rule:

> The circumstances under which dispositive documents are executed and the requirement that the recital be germane to the purpose of the document are believed to be adequate guarantees of trustworthiness, particularly in view of the nonapplicability of the rule if dealings with the property have been inconsistent with the document.

Fed.R.Evid. 803(15) advisory committee's note.

**C. Analysis**

■ The issue presented is whether the stricken portions of Exhibit C, an unsigned letter of John Brown to Dorothy Myers

---

1. *Madden v. State,* 799 S.W.2d 683, 698 (Tex. Crim.App.1990), *cert. denied,* 499 U.S. 954, 111 S.Ct. 1432, 113 L.Ed.2d 483 (1991).

2. See Act of April 30, 1957, 55th Leg., R.S., ch. 125, § 1, 1957 Tex. Gen. Laws 226, *amended by* Act approved June 16, 1965, 59th Leg., R.S., ch. 480, § 1, 1965 Tex. Gen. Laws 994, *repealed by* Order Re: New Rules of Evidence, 641–642 S.W.2d (Texas Cases) XXXV (1983) (civil actions); Order Adopting Texas Rules of Criminal Evidence, 701–702 S.W.2d (Texas Cases) XXIX (1986) (criminal cases).

dated September 5, 1985, and Exhibit I, a December 3, 1998 unsigned letter from John Brown to Jeff Smith at the Foundation, are documents containing statements subject to the hearsay exception in Rule 803(15). We hold that they are not. As noted in Texas Practice, Volume 2 by Goode, Wellborn, and Sharlot, "Documents covered by 803(15) include deeds, leases, and mortgages." GOODE, WELLBORN, & SHARLOT, 2 TEXAS PRACTICE § 803.2 (3d ed.2003). While we acknowledge that the Court of Criminal Appeals has taken a more liberal approach to the application of this exception to the hearsay rule,[3] the majority of cases addressing the rule require that the document have some sort of official or formal nature, which an unsigned letter does not possess. Further, the rule requires that dealings with the property not be inconsistent with the statement after it was made. The landlord has not treated Tri–Steel's interpretation of its property interest consistent with that interpretation—the Foundation did not acknowledge a non-conforming lease extension notice, notified Tri–Steel that it intended to enforce all its rights as landlord under the lease, and notified Tri–Steel that the lease had expired on the date of expiration. In fact, the Foundation resorted to an eviction process against Tri–Steel. For the foregoing reasons, Exhibit I was properly excluded.

█ Also, with respect to Exhibit C, we observe that if any waiver occurred prior to August 14, 1998, it was by Myers and not by the Foundation and Kuhn, who held the property from that date following its transfer to them. The date of Exhibit C is 1985, and it can have no bearing on any waiver of Tri–Steel's obligation affecting the Foundation or Kuhn, when viewed in conjunction with paragraph 26 of the 1992 lease, which remained in effect at the time

the extension notice was to be given and stated that "[t]he waiver by [l]andlord of any breach of any provision of this lease shall not constitute a continuing waiver or a waiver of any subsequent breach of the same or different provision of this lease."

█ Further, this court may look only to actions that occurred after the 1995 Amendment came into existence for actions purported to give rise to waiver of the lease extension requirements because "[i]n order to constitute a waiver, the right, benefit, or advantage in question must be in existence at the time. . . . A person cannot waive a right before he is in a position to assert it." *Smith v. McKnight,* 240 S.W.2d 368, 371 (Tex.Civ. App.-Amarillo 1951, no writ). Put another way, "[w]aiver cannot exist until the thing waived is in existence. . . . To constitute a waiver, the right or privilege alleged to have been waived must have been in existence at the time of the alleged waiver." *Pennzoil v. Socony Mobil Oil Co.,* 421 S.W.2d 416, 423 (Tex.Civ. App.-El Paso 1967, writ dism'd). Additionally, the 1992 lease, in paragraph 32, contained an integration clause that stated, "[T]his agreement constitutes the sole and only agreement of the parties to this lease and supersedes any prior understandings or written or oral agreements between the parties respecting the subject matter of this lease." "The purpose of an integration clause is to trigger the parol evidence rule which precludes the enforcement of inconsistent or prior agreements in a finalized contract." *Coffman v. Provost * Umphrey Law Firm, L.L.P.,* 161 F.Supp.2d 720, 728 (E.D.Tex.2001), *aff'd,* 33 Fed.Appx. 705, 2002 WL 433003 (5th Cir.2002), *cert. denied,* 537 U.S. 880, 123 S.Ct. 89, 154 L.Ed.2d 136 (2002). Therefore, only actions by the Foundation or

---

**3.** *See Madden,* 799 S.W.2d at 683.

Kuhn on or after August 14, 1998, or actions by Myers after December 12, 1995 and before August 14, 1998 and under the terms of the 1995 Amendment to the 1992 lease, could in any way constitute waiver of the ninety-day-notice-in-writing-by-certified-mail requirement to extend the lease past August 31, 2000. The 1985 date of Exhibit C is outside of the time period (1995–2000) wherein any actions by Myers or by Foundation/Myers/Kuhn could affect an interest in the property. Those portions of the 1985 letter that were stricken were mere pleasantries and an invitation to come inspect some work on the premises, and these portions in no way affect a property interest of any party or constitute an informal agreement concerning a lease extension. For all these reasons, the trial court did not err in striking portions of Exhibit C.

## VI.  Fact Issues

■ In its third issue, Tri–Steel asserts that it raised fact questions that precluded granting the Foundation/Myers/Kuhn motion for summary judgment. No citations to the record are set forth. This issue is inadequately briefed and is waived. *See* TEX.R.APP. P. 38.1(h). This issue is overruled.

## VII.  Jurisdiction

### A.  Introduction

■ Appellees reurge the Foundation's jurisdictional argument previously decided by this court by order. The issue presented is whether the trial court may deprive this court of its appellate jurisdiction by striking a timely filed notice of appeal under Rule 12 of Texas Rules of Civil Procedure. *See* TEX.R. CIV. P. 12. Because the application of Rule 12 to deprive this court of jurisdiction over a timely perfected appeal is not supported by the underlying purpose of Rule 12 or authorized by case law, we hold that the trial court erred by striking Tri–Steel's notice of appeal.

### B.  Factual Background

Attorney William L. Wolf filed suit on behalf of appellant Tri–Steel. The trial court granted several partial summary judgments and, on March 26, 2003, dismissed Tri–Steel's remaining claims against Appellees for want of prosecution. Wolf timely filed a motion for new trial on behalf of Tri–Steel. Wolf's motion for new trial pointed out that Tri–Steel had filed a petition in bankruptcy five months earlier, on October 1, 2002. The trial court signed a written order denying Tri–Steel's motion for new trial, and on June 24, 2003, Wolf timely filed a notice of appeal on Tri–Steel's behalf.

After Wolf filed the notice of appeal, Appellees filed in the trial court a "Motion to Show Authority" under Rule 12, alleging that Wolf did not have authority to file a notice of appeal on behalf of appellant Tri–Steel. *See* TEX.R. CIV. P. 12. Appellees argued that Wolf lacked authority because the bankruptcy court had not authorized Wolf to continue to prosecute Tri–Steel's suit against them. The trial court conducted a hearing, granted Appellees' motion, and ordered the notice of appeal filed by Wolf on behalf of Tri–Steel stricken on July 16, 2003.

Subsequently, on August 29, 2003, Tri–Steel filed with the bankruptcy court an application to employ Wolf as special litigation counsel; the bankruptcy court approved Tri–Steel's application on September 12, 2003. Then, on September 25, 2003, the bankruptcy court confirmed Tri–Steel's reorganization plan. Appellees now contend that this court lacks jurisdiction over Tri–Steel's appeal, arguing that no valid notice of appeal exists because

Wolf had no authority on June 24, 2003 to file Tri–Steel's notice of appeal.

## C. Rule 12 and This Court's Appellate Jurisdiction

■ Appellate jurisdiction is vested in this court when a notice of appeal is timely filed. *See* TEX.R.APP. P. 25.1(b) ("The filing of a notice of appeal by any party invokes the appellate court's jurisdiction."). In fact, an appellate court has jurisdiction over an appeal when the appellant timely files an instrument that is "a bona fide attempt to invoke the appellate court's jurisdiction." *Verburgt v. Dorner*, 959 S.W.2d 615, 616 (Tex.1997). Here, Wolf timely filed Tri–Steel's notice of appeal and invoked this court's jurisdiction.

After Tri–Steel invoked our jurisdiction, Appellees filed a Rule 12 "Motion to Show Authority." Rule 12 allows a party to a lawsuit who believes the suit is being prosecuted without authority to move the trial court to "cause the attorney to be cited to appear before the court and show his authority to act." TEX.R. CIV. P. 12. Appellees' motion alleged that, because Wolf failed to obtain authority from the bankruptcy court to file the notice of appeal, Tri–Steel's notice of appeal should be stricken. But this court, not the trial court, is to determine whether a document filed by a party properly invokes our appellate jurisdiction. *See* TEX. GOV'T CODE ANN. § 22.220(c) (Vernon 2004) (authorizing court of appeals to determine matters of fact necessary to proper exercise of jurisdiction); *accord* TEX.R.APP. P. 29.5(b) (prohibiting trial court retaining jurisdiction in interlocutory appeal from making order interfering with appellate court jurisdiction). Rule 12 does not grant the trial court authority to dispose of Tri–Steel's appeal by striking its timely filed notice of appeal.

Appellees do not dispute that Tri–Steel engaged Wolf to represent it in this lawsuit before it filed for Chapter 11 bankruptcy. Once Tri–Steel entered bankruptcy, however, it was required to secure the approval of the bankruptcy court to continue employing Wolf in its lawsuit against Appellees. *See* 11 U.S.C.A. § 327(e) (West 2004) (allowing the debtor in possession, with the bankruptcy court's approval, to employ "for a specified special purpose, other than to represent the [debtor in possession] in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed"). The statutory note reveals that this section "will most likely be used when the debtor is involved in complex litigation, and changing attorneys in the middle of the case after the bankruptcy case has commenced would be detrimental to the progress of that other litigation." 11 U.S.C.A. § 327 note. Accordingly, the purpose of this requirement is to protect the *bankruptcy estate*. *See In re Kurtzman*, 220 B.R. 538, 541 (S.D.N.Y.1998) (stating that section 327 ensures "both that the person's employment is necessary to the estate and that the person employed is disinterested and able to serve the best interests of the estate"), *appeal dismissed as moot*, 194 F.3d 54 (2d. Cir.1999); *see also* 11 U.S.C.A. § 328(c) (providing that the bankruptcy court may deny compensation from the assets of the bankruptcy estate to a professional person who is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed).

In contrast, Rule 12 operates to protect not the debtor or the bankruptcy estate, but the *opposing party* in the debtor-plaintiff's lawsuit. The purpose of Rule 12 is

454

"to protect *defendants* from groundless suits." *Angelina County v. McFarland,* 374 S.W.2d 417, 423 (Tex.1964) (emphasis added); *see also Boudreau v. Fed. Trust Bank,* 115 S.W.3d 740, 742 (Tex.App.-Dallas 2003, pet. denied) ("The main purpose behind the rule is that a person is entitled to know which person or party in fact authorized the suit."). Wolf's filing the notice of appeal on Tri–Steel's behalf does not run afoul of this purpose because there was no question that Tri–Steel hired Wolf to file a lawsuit against Appellees—in fact, Appellees even filed a counterclaim against Tri–Steel—and because Appellees do not contend that the filing of the notice of appeal was unauthorized by Tri–Steel. Appellees do not complain that the suit against them is groundless or that they do not know who authorized Wolf to file the notice of appeal. Furthermore, Tri–Steel has now obtained the bankruptcy court's approval to employ Wolf as its special litigation counsel, and Appellees have not ever asked this court to rule that Wolf is without authority to prosecute Tri–Steel's appeal.

Instead, Appellees' contention is that Tri–Steel's notice of appeal was a "nullity" because the trial court determined that Wolf did not possess authority to represent Tri–Steel during the critical time period when a notice of appeal was due. Because Tri–Steel as debtor in possession had the power to decide that it wanted to pursue an appeal, Appellees' only legitimate complaint can be that the bankruptcy court did not preapprove Tri–Steel's choice of attorney to file the notice of appeal.

This complaint does not implicate the policies behind Rule 12.[4]

Accordingly, the trial court was not authorized to dispose of Tri–Steel's appeal by striking Tri–Steel's timely filed notice of appeal. Therefore, the Foundation's motion to dismiss this appeal was denied by order of this court. We reject Appellees' argument that this court does not have jurisdiction for the reasons set forth herein.

## VIII. Conclusion

Having confirmed the jurisdiction of this court and overruled Appellants' issues, we affirm the ruling of the trial court.

---

4. Apparently, Tri–Steel's bankruptcy counsel and Wolf, its litigation counsel, were confused about who would represent Tri–Steel in this litigation after Tri–Steel filed for bankruptcy. But because Wolf had accepted employment as Tri–Steel's litigation counsel at the beginning of this lawsuit, and because Tri–Steel had not terminated Wolf's representation, Wolf had a continuing duty to "act with competence, commitment and dedication to the interest of the client." TEX. DISC. R. PROF. CONDUCT 1.01 cmt. 6. Had Wolf neglected to file Tri–Steel's notice of appeal and let the appellate deadline expire, he might have violated his professional duties owed to Tri–Steel. *See id.*