COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-05-150-CV

 

FRAUD-TECH, INC., DEAN MCGEE,                                      APPELLANTS

AND
ROBERT ANDREWS

                                                   V.

 

CHOICEPOINT, INC. F/K/A DATABASE                                     APPELLEES

TECHNOLOGIES,
INC. AND THE INFORMATION

CONNECTIVITY
GROUP, INC.

 

                                              ------------

 

            FROM
THE 67TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------








Appellants Fraud-Tech, Inc.,
Dean McGee, and Robert Andrews appeal from a summary judgment in favor of
appellees Choicepoint, Inc. f/k/a Database Technologies, Inc. (DBT) and The
Information Connectivity Group, Inc. (ICON).[2]  In eight issues, appellants contend that the
trial court erred by finding that no genuine issue of material fact existed as
to McGee=s and Andrews=s damage
claims for breach of contract, fraud, and conversion (issues one through five)
and as to all appellants= breach of
contract implied in law claims[3]
(issue six); that the trial court erred in denying appellants= motion for continuance of the summary judgment hearing (issue seven);
and that the trial court erred by denying appellants= motion to compel further discovery (issue eight).  We affirm.

Background Facts








A detailed factual and
procedural background of this case is set forth in this court=s prior opinion (Fraud-Tech I) addressing an August 8, 2001
summary judgment entered by the trial court on Fraud-Tech=s damage claims for breach of contract, fraud, and conversion.  See Fraud-Tech, Inc. v. ChoicePoint, Inc.,
102 S.W.3d 366, 371-73 (Tex. App.CFort Worth 2003, pet. denied). 
In summary, McGee and Andrews formed Fraud-Tech for the purpose of
jointly developing and marketing a mortgage fraud protection system with
DBT.  Id. at 371.  Although appellants and DBT entered into a
nondisclosure agreement and letter of intent, and negotiated a licensing
agreement, they never consummated the transaction.  Id. 
Appellants eventually sued DBT and ICON, an affiliate of DBT, for breach
of contract, fraud, conversion, and specific performance.  Id. 
Appellees filed traditional and no-evidence motions for summary
judgment, claiming that Fraud-Tech could not reliably prove damages on its
causes of action for breach of contract, fraud, and conversion.  Id. at 372.  The trial court granted summary judgment as
to all claims and all parties; however, appellees had not moved for summary
judgment on McGee=s and
Andrews=s claims against appellees, nor had they moved for summary judgment on
Fraud-Tech=s breach of
contract implied in law claim and its claim for specific performance.  Id. at 372-73, 385, 387.  Therefore, this court determined that summary
judgment on those claims was improper and remanded those claims to the trial
court.  Id. at 387-88.  This appeal arises out of the trial court=s disposition of those remaining claims.

Almost a year after this
court issued mandate, appellees filed a motion for summary judgment on McGee=s and Andrews=s breach of
contract, fraud, and conversion claims and on Fraud-Tech=s breach of contract implied in law claim.  The trial court granted the summary judgment
in full on November 4, 2004.  Appellants
nonsuited all remaining claims so that the summary judgment would be final.








Analysis

We will
address appellants= seventh and
eighth issues first because they are potentially dispositive.  See Tex.
R. App. P. 47.1.

Motion for Continuance and to Compel
Discovery Responses

In their seventh issue,
appellants contend the trial court erred by denying their motion for
continuance of the summary judgment hearing. 
In their eighth issue, appellants contend that the trial court abused
its discretion by denying their motion to compel further discovery.

On or about September 10,
2004, about eleven months after this court=s mandate had issued,[4]
appellants served a second set of requests for production on DBT.  According to appellants, A[t]he purpose of these Requests was to confirm newly acquired
information regarding . . . [DBT=s]  acquisition of an entity
known as Mortgage Asset Research Institute (MARI) and the [hire] of its
president/owner Jim Croft.@  Appellants allege that MARI
has a mortgage fraud product similar to Fraud-Tech=s and that evidence about MARI=s viability could potentially be used to shore up its expert=s opinions on damages, which the trial court had previously excluded
as unreliable.[5]








DBT responded and objected to
the requests on October 14, 2004, approximately two weeks after appellees filed
their motion for summary judgment.[6]  DBT asserted two general objections to the
entire set of requests.  Its first
objection was that Athe
discovery period is over.  [The trial]
Court=s Scheduling Order of February 2, 2001 established a discovery
deadline of June 25, 2001. . . . 
Moreover, [the trial] Court=s March 4, 2004 Order Setting Case for Trial . . . does not permit
additional discovery.@  Its second general objection was that the
requests were Aoverly
broad, unduly burdensome, and not reasonably calculated to lead to the
discovery of admissible evidence.  More
specifically, these Requests have nothing to do with any claims that remain
after the appeal, but rather relate to claims for money damages.@  DBT further objected to all
but one of the requests on the ground that they were Aduplicative of Requests previously served by [appellants] prior to the
end of the discovery period; therefore [appellees] would refer [appellants] to
its prior Response[s].@  








Appellants filed a motion for
continuance of the summary judgment hearing and motion to compel discovery
responses on October 19, 2004.  In the
motion, appellants contended that they were Ain need of additional discovery . . . . that is crucial to their
case-in-chief.@  They also asked the trial court to modify its
Order Setting Case for Trial to allow for the requested discovery. 

Appellees responded, claiming
that the requested discovery was irrelevant in light of this court=s prior holding in Fraud-Tech I that Fraud-Tech=s damages evidence was unreliable and, therefore, no evidence.  They also contended that the requests were
made outside the June 25, 2001 discovery deadline established by the trial
court before the previous summary judgment and appeal.  Further, appellees resisted the discovery on
the ground that the trial court=s March 4, 2004 Order Setting Case for Trial did not permit additional
discovery.

The trial court heard the
continuance part of the motion on October 29, 2004, the day of the hearing on
appellees= summary judgment
motion.  It denied the motion in its
entirety on November 4, 2004, the same day it signed an order granting
appellees= motion for
summary judgment. 








We review the trial court=s ruling on a motion for continuance for an abuse of discretion.  Joe v. Two Thirty Nine Joint Venture,
145 S.W.3d 150, 161 (Tex. 2004); Tri-Steel Structures, Inc. v. Baptist
Found. of Tex., 166 S.W.3d 443, 447 (Tex. App.CFort Worth 2005, pet. denied). 
The supreme court has considered the following nonexclusive factors when
deciding whether a trial court abused its discretion in denying a motion for
continuance seeking additional time to conduct discovery:  the length of time the case has been on file,
the materiality and purpose of the discovery sought, and whether the party
seeking the continuance has exercised due diligence to obtain the discovery
sought.  Joe, 145 S.W.3d at 161.

Here, the case had been
pending for a year after this court issued its mandate when appellants first
requested the trial court to allow the additional discovery.  No order existed allowing discovery during
that one-year period.  And appellants
offered no explanation for their delay in requesting the additional discovery,
nor did they offer any explanation for their delay in seeking the additional
discovery from DBT.[7]  Although appellants= counsel contended at the hearing on the motion for continuance that
the additional discovery was necessary so that appellants could re-examine the
conclusions of appellees= expert,
Marta McCall, appellants had not requested that the trial court reconsider its
ruling on the reliability of appellants= experts, whom McCall had criticized.








We conclude that appellants
did not show due diligence in requesting a continuance of the summary judgment
hearing for additional discovery; thus, we hold that the trial court did not
abuse its discretion in denying the motion for continuance.  We overrule appellants= seventh issue.  Because we hold
that the trial court did not abuse its discretion by denying appellants= motion for a continuance to conduct further discovery, we also
conclude and hold that the trial court did not abuse its discretion by denying
appellants= motion to
compel.[8]  See Piazza v. Cinemark, USA, Inc., 179
S.W.3d 213, 216 (Tex. App.CEastland 2005, pet. denied) (holding that trial court did not abuse
its discretion by denying motion to compel in part because appellant had
already had ample time to conduct discovery). 

Appellees= Motion for Summary judgment

In their first through sixth
issues, appellants contend that the trial court erred by granting summary
judgment for appellees on (1) McGee=s and Andrews=s breach of
contract, fraud, and conversion claims and (2) appellants= claims for breach of contract implied in law.  








Appellees filed a combined
traditional and no-evidence motion for summary judgment.  They contended that they were entitled to
summary judgment on McGee=s and
Andrews=s claims because those claims Aare completely derivative@ of Fraud-Tech=s claims;
thus, because the only evidence of Fraud-Tech=s damages was unreliable and therefore constituted no evidence of
damages, McGee and Andrews had also failed to bring forward any evidence of
damages.  In addition, appellees moved
for summary judgment on appellants= claims for breach of implied contract in law on the ground that the
damages relating to that cause of action Awould be identical to the damages relating to all the other causes of
action for which [the first] summary judgment was affirmed on appeal@ and that appellants have Ano admissible evidence [i.e., no reliable evidence] of damages as to
[the] newly-plead[ed] implied contract in law theory.@

Standard of Review

When a party moves for
summary judgment under both rules 166a(c) and 166a(i), we will first review the
trial court=s judgment
under the standards of rule 166a(i).  Ford
Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004).  If the appellants failed to produce more than
a scintilla of evidence under that burden, then there is no need to analyze
whether appellee=s summary
judgment proof satisfied the less stringent rule 166a(c) burden.  Id.








Rule 166a(i) provides that
after an adequate time for discovery, the party without the burden of proof
may, without presenting evidence, move for summary judgment on the ground that
there is no evidence to support an essential element of the nonmovant=s claim or defense.  Tex. R. Civ. P. 166a(i).  The motion must specifically state the
elements for which there is no evidence.  Id.; Johnson v. Brewer & Pritchard,
P.C., 73 S.W.3d 193, 207 (Tex. 2002). 
The trial court must grant the motion unless the nonmovant produces
summary judgment evidence that raises a genuine issue of material fact.  See Tex.
R. Civ. P. 166a(i) & cmt.; Sw. Elec. Power Co. v. Grant, 73
S.W.3d 211, 215 (Tex. 2002).

We review the evidence in the
light most favorable to the party against whom the no evidence summary judgment
was rendered.  King Ranch, Inc. v.
Chapman, 118 S.W.3d 742, 751 (Tex. 2003), cert. denied, 541 U.S.
1030 (2004); Johnson, 73 S.W.3d at 197; Morgan v. Anthony, 27
S.W.3d 928, 929 (Tex. 2000).  If the
nonmovant brings forward more than a scintilla of probative evidence that
raises a genuine issue of material fact, then a no evidence summary judgment is
not proper.  Moore v. K Mart Corp.,
981 S.W.2d 266, 269 (Tex. App.CSan Antonio 1998, pet. denied).

Discussion








In response
to appellees= summary
judgment motion, appellants presented the same evidence that they attached to
their response to appellees= prior summary judgment that was the subject of Fraud-Tech I,
with one exception:  a new affidavit from
McGee with four exhibits attached, all of which attempted to show that
appellants could prove damages.  Because
the trial court had already determined that the expert testimony on damages
presented in connection with the first summary judgment was unreliableCand appellants never asked the trial court to reconsider that rulingCwe conclude that that evidence could not raise a fact issue as to
appellants= ability to prove
damages on their claims.  Thus, we must
determine whether the new evidence presented by appellants was sufficient to
raise a genuine issue of material fact as to McGee=s and Andrews=s ability to
prove damages on all of their claims and Fraud-Tech=s ability to prove damages on its breach of contract implied in law
claim.








In his new affidavit McGee
averred that he had re-reviewed the affidavit of Marta McCall, appellees= damages expert, and Acurrent public information related to the mortgage industry and, in
particular, Appentel, Affinity Corporation, Mortgage Asset Recovery Institute
(MARI), and [DBT].@  McGee stated that these three companies own
products similar to Fraud-Tech=s and explained in detail how the current viability and success of
those companies= products in
the mortgage industry undercuts McCall=s prior testimony on appellants= ability to prove damages.  But
as this court explained in Fraud-Tech I, appellants cannot shift the
burden of proving the admissibility of their experts= testimony to appellees.  See
Fraud-Tech, 102 S.W.3d at 382.  Thus,
instead of determining whether McGee=s new affidavit casts doubt on appellees= expert=s testimony
regarding damages, we must determine whether it brings forward any new evidence
that would support appellants= damages claims.








We agree with appellees that
McGee=s affidavit testimony concerning the current viability and success of
allegedly similar products, Aat best, demonstrates the viability of [Fraud-Tech=s] competitors, but it does not demonstrate that the market share
projections that the trial court found to be unreliable were, in fact,
reliable.@  As this court noted in Fraud-Tech I,
the testimony of at least one of Fraud-Tech=s experts, Dr. Burkman, was unreliable in part because he had not
considered the possibility that competing products might come online and
actually reduce rather than increase Fraud-Tech=s market share.  Id. at
383.  McGee=s affidavit testimony attempts to show that Fraud-Tech=s product was viable and that it could have captured a measurable
market share by showing that the companies referenced in his affidavit, which
were also discussed and analyzed by the experts in the prior motion for summary
judgment that was the subject of Fraud-Tech I, have now attained success
in the mortgage industry with their products. 
But McGee also fails to address the effect that this competition would
have had, if any, on appellants= product.  Thus, his new
affidavit testimony suffers from the same defect as appellants= prior proferred expert testimony. 
Accordingly, we conclude that appellants= new responsive evidence does not raise a genuine issue of material
fact on appellants= damage
claims.

In the last paragraph of his
affidavit, McGee avers that appellants are entitled to reimbursement of
out-of-pocket expenses of $24,000[9]
on their breach of contract, fraud, and conversion claims.  However, this part of the affidavit is
conclusory because it does not supply facts underlying its conclusions;[10]
therefore, it constitutes no evidence of any additional damages.  See Trejo v. Laredo Nat=l Bank, 185 S.W.3d 43, 50-51 (Tex.
App.CSan Antonio 2005, no pet.); Lefton v. Griffith, 136 S.W.3d 271,
277 (Tex. App.CSan Antonio
2004, no pet.).








Because we determine that
appellants failed to bring forward any evidence on damages as to their breach
of contract implied in law claims and McGee=s and Andrews=s breach of
contract, fraud, and conversion claims, we hold that the trial court did not
err by granting the no-evidence summary judgment in favor of appellees.  We overrule appellants= first through sixth issues.

Conclusion

Having overruled appellants= eight issues, we affirm the trial court=s judgment.

 

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL B:   LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

 

DELIVERED:
April 20, 2006











[1]See Tex. R. App. P. 47.4.





[2]Thomas
H. Hoolihan, Phillip Wamock, and Andrew Perlmutter, who, along with appellees,
were also defendants below, filed their own motion for summary judgment, which
the trial court granted.  Appellants have
not appealed that summary judgment. 





[3]Appellants
asserted other claims in their last live pleading on file, a Seventh Amended
Original Petition and Application for Temporary Restraining Order and for
Temporary Injunction, but after the trial court granted summary judgment to
appellees, appellants nonsuited all of their remaining claims that were not
disposed of in the summary judgment. 





[4]We
issued mandate on October 24, 2003.





[5]We
affirmed this finding in Fraud-Tech I. 
102 S.W.3d at 385.





[6]It is
not clear from the record when the first set of requests for production was
filed, but it appears from appellees= responses and objections
that the first set was filed before the first summary judgment in Fraud-Tech
I.  





[7]An
article included in appellants=s summary judgment evidence
shows that DBT acquired MARI on June 2, 2003. 





[8]Once
the trial court determined that a motion for continuance was unwarranted,
appellants=
motion to compel was essentially rendered moot.





[9]McGee
contends that these expenses consist of attorney=s
fees of approximately $2,500 for document review of the contracts entered into
by appellants and appellees, $1,500 in attorney=s
fees for an opinion under the Fair Credit Reporting Act, unspecified amounts
for hotels, airline flights, and rental cars for trips McGee took to Florida in
connection with Fraud-Tech=s initial dealings with
appellees, and unspecified amounts for consulting fees for  development services appellants allegedly
provided appellees in connection with Fraud-Tech=s
product. 





[10]For
example, in the affidavit, McGee avers that these out-of-pocket expenses were
the direct result of appellees= acts constituting breach of
contract, fraud, and conversion; however, he fails to explain how these damages
resulted from appellees=
actions.  Specifically, he fails to
address the fact that appellants would have incurred these expenses regardless
of appellees=
subsequent actions.