United States Court of Appeals
Fifth Circuit

**F I L E D**

September 11, 2006

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 05-51650

DONNIE WILLIAMS,

Plaintiff-Appellant,

versus

COLONIAL BANK, N.A., as successor-in-interest
to First Mercantile Bank, N.A. and
THE COLONIAL BANCGROUP, INC. as successor-in-interest
to Mercantile Bancorp, Inc.,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Texas

Before KING, GARWOOD, and JOLLY, Circuit Judges.

PER CURIAM:[1]

Plaintiff-appellant Donnie Williams (Williams) appeals the district court's September 21, 2005 Order denying his Motion to Alter or Amend Judgment and its August 22, 2005 final Amended Judgment that Williams take nothing in his suit against defendants-appellees Colonial Bank, N.A. (Colonial Bank) and The Colonial

---

[1] Per 5th Cir. R. 47.5, the court has decided that this opinion should not be published and is not precedent except under those limited circumstances set forth by 5th Cir. R. 47.5.4.

Bancgroup, Inc. (Colonial Bancgroup).  We affirm.

**FACTS AND PROCEEDINGS BELOW**

In 1999, First Mercantile Bank (First Mercantile), located in Dallas, a wholly owned subsidiary of Mercantile Bancorp, Inc. (Mercantile), decided to open a branch bank in Austin.  By letter dated April 4, 2000, Roy Salley, First Mercantile Bank president and holding company CEO, offered Williams, and Williams accepted, the position of area president of First Mercantile's Austin branch bank.

Williams joined First Mercantile in May 2000.  His employment agreement included both non-incentive and performance-based stock options.  Specifically, upon hire, First Mercantile granted Williams ten thousand stock options outright, and it was further agreed that:

> "After three months of profitability, you will receive an additional 5,000 stock options at the then current stock price to be vested out over five years.  Finally, if you achieve $50 million in total assets within 24 months from the opening of the Austin branch, you will receive 5,000 stock options at the then current stock price to be vested over five years."

The Austin branch opened in March 2001.

On November 29, 2001, Mercantile entered into a merger agreement with Colonial Bancgroup.  Subsequently, on January 10, 2002, First Mercantile executed an agreement of merger with Colonial Bank, a subsidiary of Colonial Bancgroup.  On March 21, 2002, Williams executed an employment agreement with Colonial Bank

2

that designated Williams as Branch President/Austin-Lender of the Texas Region following the merger. The agreement, stated to take effect upon the merger, did not mention any performance-based stock options and included the following provision:

> "This Agreement constitutes the entire understanding and agreement between the parties hereto with respect to the subject matter hereof, and there are no agreements, understandings, restrictions, representations, or warranties between the parties other than those set forth or provided for herein."

Parent companies Mercantile and Colonial Bancgroup merged on March 28, 2002. Colonial Bank and First Mercantile merged the next day. Colonial Bancgroup and Colonial Bank are the surviving entities. At the time of the merger, neither of the two performance goals outlined in Williams' employment agreement with First Mercantile, each of which would have triggered receipt of the five thousand options, had been met.

Williams brought suit against Colonial Bank, as successor-in-interest to First Mercantile, and Colonial Bancgroup, as successor-in-interest to Mercantile, alleging breach of contract, unjust enrichment, and promissory estoppel. On May 17, 2005, Williams moved for partial summary judgment. Defendants-appellees responded and moved for summary judgment on June 20, 2005. Williams filed his response on June 28, 2005. The district court ruled on both motions on August 11, 2005, denying Williams' motion and granting the motion brought by defendants-appellees. Judgment was entered August 12, 2005, and amended *sua sponte* on August 22, 2005 to

3

correct a clerical error.  On August 26, 2005, Williams filed a Motion to Alter or Amend Judgment, claiming that the district court's ruling did not address his unjust enrichment and promissory estoppel claims.  The district court overruled Williams' motion on September 21, 2005.

## DISCUSSION

We review a district court's grant of summary judgment *de novo*.  *Garcia v. Lumacorp, Inc.*, 429 F.3d 549, 553 (5th Cir. 2005).  Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).

Williams contends the district court erred in granting summary judgment because genuine issues of material fact existed with respect to whether his employment agreement with First Mercantile was breached.  He argues that (1) the Colonial entities repudiated the employment agreement with First Mercantile and that (2) First Mercantile failed to provide Williams the continuing opportunity to earn performance-based options.

The district court did not err in granting summary judgment. Williams' employment agreement with First Mercantile did not forbid a merger, and Colonial Bank's discussion with Williams regarding the post-merger terms of employment with Colonial Bank did not

4

constitute a repudiation of the First Mercantile agreement.

Williams also contends that the district court erred in applying the doctrine of merger to hold that his employment agreement with Colonial Bank superseded his agreement with First Mercantile. Again, we disagree. Under the "doctrine of merger," a prior contract is absorbed into a subsequent one when "the *same* parties to an earlier agreement later enter into a written integrated agreement covering the *same* subject matter." *Fish v. Tandy Corp.*, 948 S.W.2d 886, 898 (Tex. App.—Fort Worth 1997, writ denied). Thus, where the parties and subject matter are the same, and ambiguity, fraud, accident, or mistake is neither pleaded nor proven, "a written instrument presumes that all prior agreements of the parties relating to the transaction have been merged into the written instrument." *Weinacht v. Phillips Coal Co.*, 673 S.W.2d 677, 679 (Tex. App.—Dallas 1984, no writ). The merger doctrine triggers the parol evidence rule, precluding enforcement of prior agreements. *Tri-Steel Structures, Inc. v. Baptist Found. of Tex.*, 166 S.W.3d 443, 451 (Tex. App.—Fort Worth 2005, pet. denied). The parol evidence rule is "particularly applicable" where there is an integration clause such as that included in Williams' employment agreement with Colonial Bank. *See Boy Scouts of Am. v. Responsive Terminal Sys., Inc.*, 790 S.W.2d 738, 745 (Tex. App.—Dallas 1990, writ denied).

Williams has not pleaded ambiguity, fraud, accident, or

5

mistake.  Rather, he claims the parties and subject matter of the two employment agreements differ.  As the district court made clear, however, these arguments must fail:

> "He first contends the [employment agreement] was not between the same parties as his prior agreement.  Once again, Plaintiff has failed to consider the language in the Agreement of Merger which deems the 'Resulting Bank . . . the same corporation as [First Mercantile] and Colonial [Bank].'  Clearly, the Defendants sought to place Colonial Bank into the shoes of First Mercantile in executing a merger agreement including this language.  Accordingly, for the purposes of the [employment agreement], Colonial Bank and First Mercantile must be considered equivalent entities.
>
> Second, Williams, contends the [employment agreement] did not involve the same subject matter as his prior agreement.  Plaintiff characterizes his prior agreement as relating to his employment and options prior to the merger.  According to him, the [employment agreement] governed his post-merger employment and made promises of future discretionary grants of Colonial Bancgroup stock options.  Thus, Williams concludes the two agreements addressed wholly separate employment arrangements and stock options.
>
> The Court declines to adopt such a narrow reading of the two agreements.  It is clear the subject matter of the two agreements involved the terms of Williams' employment as the President of the Austin branch.  The differences in the terms of Plaintiff's employment under the two agreements does not alter the nature, and identity, of the subject matter."

The district court correctly applied the merger doctrine to hold that Williams' employment agreement with Colonial Bank superseded his agreement with First Mercantile.

Finally, plaintiff-appellant argues that the district court erred in issuing a final judgment because it did not specifically mention Williams' unjust enrichment and promissory estoppel claims. Here, too, we disagree with plaintiff-appellant.  Having ruled that

6

Williams' employment agreement with Colonial Bank superseded that which he entered with First Mercantile, the district court correctly issued a final judgment. Williams did not allege in his motion to alter or amend the judgment (or in any of his other filings below), and he has not asserted on appeal, *any* facts extraneous to those the district court considered that would support his unjust enrichment and promissory estoppel claims notwithstanding the correctness of the district court's determination that the employment contract with Colonial Bank superceded his agreement with First Mercantile.

The existence of a valid, express contract that covers the subject matter of the parties' dispute generally precludes recovery under a quasi-contract theory. *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000). Thus, because an express agreement has at all times governed the terms of Williams' employment, he may not recover in quantum meruit for the services he rendered in helping to establish the Austin bank branch. *See Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990) ("Generally, a party may recover under quantum meruit only where there is no express contract covering the services or materials furnished."). He is limited to the compensation outlined in his employment agreement with Colonial. *See First Union Nat'l Bank v. Richmont Capital Partners I, L.P.*, 168 S.W.3d 917, 931 (Tex. App.—Dallas 2005, no pet.) (noting that, when a relevant contract

7

exists, "there can be no recovery under a quasi-contract theory because parties should be bound by their express agreements").

Similarly, Williams' promissory estoppel claim must fail. *See Doctors Hosp. 1997, L.P. v. Sambuca Houston, L.P.*, 154 S.W.3d 634, 636 (Tex. App.—Houston [14th Dist.] 2004, pet. abated) (stating that "promissory estoppel becomes available to a claimant only in the *absence* of a valid and enforceable contract"). Had Williams alleged a promise independent of the contract, a promissory estoppel claim might have been sustainable. *See Richter v. Wagner Oil Co.*, 90 S.W.3d 890, 899 (Tex. App.—San Antonio 2002, no pet.). As Williams alleges the facts, he was clearly told he would not receive incentive-based options under Colonial Bank. In his Opposition to Defendants' Motion for Summary Judgment, Williams stated:

> "Mr. Williams raised the issue of his 10,000 ungranted incentive options prior to the merger, and continued to raise the issue with both Mercantile and, following the merger, Colonial. Colonial consistently took the position that the options were extinguished in the merger, and that they had no continuing liability under the Mercantile agreement. In addition, Roy Salley, the president of Mercantile and president of Colonial's Texas region following the merger, took this position during conversations with Mr. Williams."

In short, according to plaintiff-appellant's own version of the facts, there was no promise upon which Williams could have relied to support a promissory estoppel claim.

Although the unjust enrichment and promissory estoppel claims were not specifically named, the district court clearly included

8

them in its August 11, 2005 summary judgment order stating that "Defendants are entitled to summary judgment on all claims against them." In its August 22, 2003 Rule 58(a) judgment the court "ORDERED, ADJUDGED, and DECREED that the plaintiff Donnie Williams TAKE NOTHING in this cause against defendants . . . and that all costs of suit are taxed against the plaintiff, for which let execution issue." And, in its order overruling Williams's Motion to Alter or Amend Judgment, the court stated:

> "Williams well knew the defendants were seeking a summary judgment regarding all issues. . . . Williams filed a Motion to Alter or Amend Judgment contending the Court did not address or rule 'upon plaintiff's claims of unjust enrichment and promissory estoppel, neither of which were placed before the Court for decision.' This statement is completely inaccurate. The defendants placed all issues for summary judgment on its behalf before the Court and Williams in its response to the summary judgment and in the Motion to Alter or Amend Judgment cites no evidentiary record before the Court which would establish any factual issue regarding theories of unjust enrichment and promissory estoppel. The defendants sought summary judgment, filed an evidentiary record, and the Court granted the same based on the evidentiary record before the Court."

The district court unambiguously manifested its intention to, and in fact did, dispose of all of Williams's claims.[2]

---

[2] Williams relies on *Stillman v. Travelers Ins. Co.*, 88 F.3d 911 (11th Cir. 1996), in which the Eleventh Circuit held that the district court erred in granting a summary final judgment because a list of alternative affirmative defenses had not been addressed. *Id*. at 912. In that case, the motion for summary judgment that formed the basis for the final judgment set forth facts that addressed (and rejected) only one affirmative defense. *Id*. Consequently, the district court's holding on the single affirmative defense did not permit the conclusion that the plaintiff's claims were correct as a matter of law. *Id*. at 913

9

**CONCLUSION**

The judgment of the district court is

AFFIRMED.

---

n.2.  Conversely, in the instant case, the district court's determination that Williams' employment agreement with Colonial superseded his employment agreement with First Mercantile provides a basis for dismissing Williams' unjust enrichment and promissory estoppel claims.